31675, 31685. AULD *v.* COLONIAL STORES INC. *et al.*

Decided October 29, 1947.  Adhered to on rehearing December 18, 1947.

334

*G. S. Peck, A. L. Henson,* for plaintiff.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Hoke Smith, J. F. Kemp, J. M. Johnson,* for defendants.

TOWNSEND, J. (After stating the foregoing facts.) ▮ The first headnote is a statement of a portion of the statutory law on the question of suits for malicious prosecution, and needs no elaboration.

▮ Where there is probable cause, a suit for malicious prosecution cannot be maintained. Our Code (§ 105-802), provides

that the want of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. But this is not exhaustive of all the instances of probable cause. *Coleman* v. *Allen*, 79 *Ga.* 637, 642 (5 S. E. 204). It has been held by the courts of last resort in many of the States that probable cause does not depend upon the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution, and that the reasonable and probable cause must appear to have existed in his mind at the time of his proceeding. 18 R.C.L. 37. The court approves this view in *Coleman* v. *Allen*, supra, adding on pages 640 and 642 of the opinion that probable cause is that apparent state of facts which seems to exist after reasonable and proper inquiry, and recognizes the duty of caution and avoidance of haste.

The burden of proving the want of probable cause is on the plaintiff. *Sykes* v. *Southside Atlanta Bank*, 53 *Ga. App.* 450, 452 (186 S. E. 464). And where he introduces sufficient evidence to infer a want of probable cause, the case should be submitted to the jury on this point, provided there is sufficient evidence to carry the case to the jury on the question of malice.

In the instant case the prosecutor in the criminal proceedings had in his possession the check upon which the prosecution was based. This check showed upon its face that it was not promptly presented for payment, and that a period of two months had elapsed between the time when the check was drawn and the time it was presented for payment. The very lapse of time put this prosecutor upon notice that there may have been funds in the bank out of which the same would have been paid had it been presented promptly.

Therefore, before charging the person who drew the check with uttering and passing a check drawn on a bank in which he did not have and knew he did not have sufficient funds, or credit, to pay the same upon presentation, any reasonable man, under such circumstances, would have made proper inquiry. This inquiry would have eliminated the possibility of probable cause in this case. This want of proper diligence resulting in the want of probable cause is emphasized by the letter to the

maker of the check stating that the prosecutor would take out a criminal warrant against such maker for the purpose of causing him embarrassment and increasing the cost to him unless he paid the check.

The fact that the magistrate before whom the accused was brought when he was arrested upon the warrant bound the accused over to answer to the charge made in the warrant does not *ipso facto* establish that probable cause existed for making the affidavit and causing the warrant to be issued, but, at most, was only prima facie evidence, which may be rebutted. See *Darnell* v. *Shirley, Sykes* v. *Southside Atlanta Bank,* supra. This prima facie evidence could be rebutted either by direct or circumstantial evidence. That it was successfully rebutted in this case is conclusively established by the evidence of the prosecutor himself, and without dispute, when he admitted that he saw the bank's statements which were introduced in evidence at the committal hearing, and heard the evidence of the bank cashier, to the effect that there were sufficient funds in the bank to pay the check at the time it was drawn and delivered to the payee, and for several days thereafter, and would have been paid had it been presented promptly.

Notwithstanding these facts, the prosecutor thereafter made an affidavit as a basis for a criminal prosecution charging the same offense, signed the accusation as prosecutor, and personally prosecuted the case in the criminal court. The jury should decide whether this constitutes the want of probable cause.

The defendants seek to avoid this result by suggesting that counsel for the plaintiff after the committal hearing requested the prosecutor to proceed with the prosecution. But an examination of the record discloses that counsel in effect told the prosecutor that the accused would sue the prosecutor for malicious prosecution upon a favorable termination of the case (a prerequisite to such a suit), and suggested to the prosecutor that he proceed so that such a suit could be brought. Instead of encouraging the ordinary person to continue with the prosecution, this would have prevented it.

The record does not disclose such facts as to estop the plaintiff, or to constitute a waiver, or to amount to a consent to the prosecution.

■ Malice may be inferred from want of probable cause. This inference is one of fact to be drawn by a jury. The letter written by the prosecutor to the accused, in which it was stated that the prosecutor would cause a warrant to issue against the accused to his embarrassment and added cost if a certain payment was not made, announced an ulterior motive for the prosecution and raised a strong inference of malice. This, too, is an inference of fact to be drawn by a jury.

The fact that the prosecutor continued with the prosecution after he knew that the accused was not guilty of the offense charged, and his other conduct, raised an inference of fact that the prosecutor acted with a malicious design. Although he stated that his design was to deter others, the only method by which the sincerity of this declaration can be tested is the surrounding circumstances throwing light upon the motive. How the prosecutor expected to deter others by a case that the accused was certain to win is not disclosed by his evidence or the apparent facts. Now, it could be that he expected to deter others by demonstrating to them how completely embarrassed they might become in winning the case, and how much it might cost them in time, in worry and trouble defending it, and in cost of attorneys fees, etc., even though they should win. But the jury would be justified in finding that this kind of determent was within itself a malicious prosecution. It follows that malice may consist of a general disregard of the right and consideration of mankind, or a portion of society, directed by chance against the individual injured. See *Darnell* v. *Shirley, supra.*

■ Headnote 4 needs no elaboration.

■ A majority of the court, SUTTON, C. J., MACINTYRE, P. J., FELTON, AND PARKER, JJ., are of the opinion that the judge did not err in granting a nonsuit as to Colonial Stores Inc. They state: The undisputed evidence of Victor D. Young was: "I did not take out this warrant and this accusation in behalf of the Colonial Stores; I took it out in my own behalf. . . In this specific instance about this one check, I did not have any instructions from anybody to take out a warrant, or do anything to collect it. The check came in the usual course and channel of trade as other checks come from them. It is not my

usual custom when checks are not paid to take out a warrant. . . I am also president of Merchants' Protective Association. I gave instructions as president and manager of the Merchants' Protective Association as to the collection of checks from Colonial Stores; and those instructions are not to take any warrants on any checks without first being authorized by the company [The Colonial Stores Inc.]. The company did not in this instance authorize me to take a warrant. The company has never authorized me to take a warrant."

In Minter v. Southern Express Co., 153 N. C. 507 (69 S. E. 497), it was held that an express company is not liable for the wrongful acts of its agent at its office in a city, in charge of its business there, in causing the arrest of one for larceny from the office, unless it authorized or ratified the act.

It has been held that the chief secretary and treasurer of a corporation, having control and management of the receipt and disbursement of the funds of the company, cannot arrest a person for embezzlement in the name of the State so as to render the company liable for malicious prosecution. Gillett v. Missouri Valley R. Co., 55 Mo. 315 (17 Am. R. 653). It has also been held that an agent or servant entrusted with the goods or money of the corporation has not the implied authority to cause the arrest of a person for embezzlement so as to render the corporation liable for malicious prosecution or false imprisonment. Carter v. Howe Machine Co., 51 Md. 290 (34 Am. R. 311).

The general rule appears to be that the authority conferred upon an agent to collect a debt does not imply authority to cause an arrest so as to render the principal liable in an action for malicious prosecution, in the absence of ratification or adoption of the agent's act.

It has been said that the general rule is that every authority carries with it, or includes in it as an incident, all the powers which are necessary, proper, or usual as means to effectuate the purpose for which it was conferred; and that consequently, when an agency is created for a specific purpose or in order to transact particular business, the agent's authority by implication embraces the appropriate means and power to accomplish the desired end. He has not only the authority which is expressly given, but such

as is necessarily implied from the nature of the employment. The doctrine of respondeat superior is a familiar one, but it has no application to the facts of the instant case. If we should hold that it is so broad in its scope as to include cases like this one, it would lead to most dangerous consequences. For us to say that an agent by his acts subjects his principal to liability in damages to one injured by his said acts done when he was not about his master's business, and that he had no express or implied authority to do them, would be carrying the doctrine of respondeat superior far beyond its acknowledged limits.

Even if Colonial Stores authorized Merchants' Protective Association to use all appropriate means to collect its claim, Colonial Stores would be liable and responsible for only the appropriate means used by the agent, and we certainly do not think that it can be said that a criminal prosecution is a means appropriate to the collection of a debt. Should we hold that Colonial Stores was responsible for the act of Merchants' Protective Association, it would be to hold that, when an authority to collect a debt is shown, the law will imply the authority to institute criminal prosecution against the debtor in case the debtor fails or refuses to pay.

The act of criminally prosecuting Auld was an act without the scope of the agency and cannot be brought within the limits of the implied authority of the agent.

"It is not intended to assert that a principal cannot be held responsible for the wilful or malicious acts of the agent, when done within the scope of his authority, but that he is not liable for such acts, unless previously expressly authorized or subsequently ratified, when they are done outside of the course of the agent's employment and beyond the scope of his authority. as when the agent steps aside from the duties assigned to him by the principal to gratify some personal animosity, or to give vent to some private feeling of his own (McManus v. Crickett, 1 East, 106), or, as is forcibly stated by Lord Kenyon in the case cited, quoting in part from Lord Holt: 'No master is chargeable with the acts of his servant but when he acts in the execution of the authority given him. Now, when a servant quits sight of the object for which he is employed, and, without having in view

his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and his master will not be answerable for his acts.'

"It may then be gathered from the books as 'a general rule, which is clearly applicable to the facts of this case, that if the servant, instead of doing that which he is employed to do, does something else, which he is not employed to do at all, the master cannot be said to do it by his servant, and therefore is not responsible for what he does. It is not sufficient that the act showed that he did it with the intent to benefit or to serve the master. It must be something done in attempting to do what the master has employed the servant to do.' " Daniel *v.* Atlantic Coast Line R. Co., 136 N. C. 517 (48 S. E. 816, 67 L. R. A. 455, 1 Ann. Cas. 718).

The question here is: Can such acts on the part of Young be held to be within the scope of the agency and in the course of his employment? There may be, and the books recognize, some difficulty in determining what acts of an agent or employee are properly within the range and course of his employment, but to say that to put the criminal law in operation against a party on the charge here in question is within the scope of the agency and in the course of the agent's employment is a proposition which, in the light of decided cases, we do not think can be maintained

"A principal is not put on notice of the unauthorized act of an agent by the mere knowledge of the agent of the acts he himself has done in excess of his authority." *Newton* v. *Gulf Life Ins. Co.*, 55 *Ga. App.* 330, 332 (190 S. E. 69).

We think that the rule laid down in 34 Am. Jur., Malicious Prosecution, 760, § 91, is applicable here: "The authority conferred upon an agent to settle accounts or collect a debt does not imply authority to cause an arrest, so as to render the principal liable in an action for malicious prosecution, in the absence of ratification of the agent's act."

There then remains only the question of whether Colonial Stores ratified or adopted the acts of Young. It seems that, when the defendant's attorney, subsequently to the swearing out of the warrant, offered his personal check to satisfy the debt, the undisputed testimony of Young is: "I told him [the attorney] I could not accept the check because the matter was in court.

Judge Rosser would not allow me to accept it until the matter was disposed of by the court. I even went to Judge Rosser and asked him about it, and he said, 'Absolutely not, you cannot accept the check or withdraw the warrant.' Mr. Peck [defendant's attorney] contacted him then, and he refused."

There was no preliminary hearing at that time, and up to this time there is nothing in the record to show that Colonial Stores knew that the warrant had been sworn out, or a prosecution begun. The next day there was a preliminary hearing before Judge Rosser and the defendant was bound over on the alleged charge.

The testimony of Young was undisputed and showed: "The store manager was brought up there [to the preliminary trial] on subpoena, yes, sir; and he did appear and testify." There is on testimony that such manager heard the testimony of other witnesses or knew what they testified at such preliminary trial.

The plaintiff Auld was recalled and testified that A. M. Thompson, the manager of the Little Star Store where he gave the check, testified at the preliminary trial before Judge Rosser, and in so far as the record shows he merely identified the check in question as having come through his store. This is all the evidence of any ratification or adoption by Colonial Stores of the swearing out of the warrant or otherwise ratifying or adopting the prosecution which had been begun by Young. Thus, after Young, who was the agent of Colonial Stores to collect the debt, had sworn out a warrant, not only without the authority of Colonial Stores but against their express instructions, and Judge Rosser had instructed Young that he could not accept the check which had the conditions attached or withdraw the warrant, and thereupon the manager of Colonial Stores was brought in by a subpoena and identified the check—in short, there is no evidence in the record to show that Colonial Stores had anything to do with the prosecution of the criminal case, unless it be said that its manager, in obeying a subpoena and testifying at the preliminary hearing, was so doing. The record does not show that any of the officers or employees appeared in response to a subpoena or otherwise and testified at the subsequent trial in the Criminal Court of Fulton County where Auld was ac-

quitted. However, the record shows that, after the preliminary trial, the defendant's attorney insisted that Young file the accusation and proceed to try the case, and threatened to go to the judge of the Criminal Court of Fulton County and make him, Young, do so. Later the solicitor of said court requested Young to sign the accusation, which he did; but the record does not show that Colonial Stores knew anything about this or any of the circumstances of the case after its manager testified at the preliminary hearing in response to a subpoena.

This case is different from those cases where an attorney at law is instructed to collect a note by a suit, in that it is then within the scope of his authority to sue out an attachment. Thus, the agent of Colonial Stores having acted beyond the scope of his employment, and Colonial Stores not having ratified or adopted such acts of the agent, Colonial Stores is not liable in an action for malicious prosecution, and the trial judge properly granted a nonsuit as to that defendant. *Niebuhr* v. *Pridgen Bros. Co.*, 56 *Ga. App.* 668 (193 S. E. 597).

Even though the majority opinion is controlling in the case sub judice, GARDNER, J., and the writer are of the opinion that the trial judge erred in granting a nonsuit as to Colonial Stores Inc. (See dissenting opinion.)

■ When a petition is not demurred to, and is proved as laid without at the same time disproving the plaintiff's right of recovery, the award of a nonsuit is error. See *Clark* v. *Bandy*, 196 *Ga.* 546 (supra), and cases cited. In the instant case, issues of fact are raised as to the defendants, Young and Merchants' Protective Association, which should have been submitted to the jury.

■ By cross-bill of exceptions the defendant Colonial Stores Inc. contends that the court erred in permitting a check to be introduced in evidence. The record discloses that this check was signed by the attorney for the plaintiff and was tendered to Colonial Stores Inc. at the time of the committal hearing on the warrant charging the plaintiff with being a common cheat and swindler. This check was in the sum of $1 and was offered as payment of the civil liability of the accused to Colonial Stores Inc. The plaintiff contends that this check was offered to show his good faith. While the good faith of the plaintiff at the time

the check was offered was irrelevant and immaterial, yet the court did not commit error in admitting the check over the objection that it did not constitute legal tender, that it was not in a sum sufficient to pay the principal and accrued interest, and the indorsement on the check prevented it from being an unconditional tender. While the check was not admissible on any of the grounds pointed out by these objections, it was admissible for another purpose. The accumulated interest on the check on which the prosecution was instituted was less than a cent and a half. Such check is admissible in evidence for the purpose of throwing light on the question of whether or not there was malice on the part of the prosecutor, for whatever probative value the jury might see fit to give it.

There being a dissent in the division of this court to which this case was originally assigned, the case was considered and decided by the court as a whole pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment reversed on the main bill of exceptions as to defendants V. D. Young and Merchants' Protective Association Inc.; and affirmed on the cross-bill. All the Judges concur.*

*Judgment affirmed on the main bill of exceptions as to Colonial Stores Inc., Sutton, C. J., MacIntyre, P. J., Felton and Parker, JJ., concur. Gardner and Townsend, JJ., dissent.*

GARDNER and TOWNSEND, JJ., dissenting as to the 5th headnote and the corresponding division of the opinion. We concur in the decision of the majority with these exceptions.

Victor D. Young, called by the adverse party, testified in part and substance that, at the time of the issuance of the warrant forming the basis for the criminal action upon which this suit is predicated, he was manager of Merchants' Protective Association, which is a corporation granted by the superior court to run without pecuniary gain; and that its business is to represent its members, among which is the defendant, Colonial Stores Inc , in the collection of checks. He further testified that he had no financial interest whatever in the check for which the plaintiff herein was criminally prosecuted; that he took out the warrant "because we handle checks for all the members." The jury would have, therefore, been authorized to have found that Merchants' Protective Association was, in connection with the swear-

ing out of the warrant by its officer and agent, Victor D. Young, acting as agent for Colonial Stores Inc. within the scope of its authority. The jury would also have been authorized to have found from the evidence that Colonial Stores Inc. through its officers, agents and servants, held the check for approximately 2 months before presenting it for collection; that at the time the check was executed there was sufficient money in the bank to cover it, which remained there for 6 days; that it then dropped below $1 for several days, but during most of the time from the date of the execution of the check, January 15, to February 10 when the account was closed, sufficient funds were in the bank to cover the check had it been presented; also that a representative of Colonial Stores Inc. was present in court at the committal trial, heard this testimony, and thereafter the defendant, Colonial Stores Inc., did not withdraw the check from its collecting agent. Thus Colonial Stores, after knowledge that its agent had instituted an illegal prosecution and not disclaiming such illegal conduct, acquiesced in the illegal criminal prosecution and ratified the misconduct of its agent.

The defendants, Merchants' Protective Association and Colonial Stores Inc., are corporations. Corporations can only act through individuals serving them as officers, agents, and servants.

Section 4-312 of the Code provides as follows: "The principal shall not be liable for wilful trespass of his agent unless done by his command or assented to by him." Section 105-108 of the Code provides: "Every person shall be liable for torts committed by his wife, his child, or his servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary."

In *Western & Atlantic Railroad* v. *Turner*, 72 *Ga.* 292 (2a) (53 Am. R. 842), the following is held: "Section 2203 of the Code [4-312] must be construed with section 2961 [105-108], so as to harmonize the two and allow both to remain of force in the cases to which they apply."

In *Atlantic Co.* v. *Farris*, 62 *Ga. App.* 212 (8 S. E. 2d, 665), the following is held: "A client is liable to a third person who is injured by the act of his attorney, done in the execution of matters within the attorney's authority, such as the issuance of an attachment where the attorney has been employed to collect

a claim. 6 C. J. 671; *Parker* v. *Home Mutual Bldg. & Loan Association,* 114 *Ga.* 702 (40 S. E. 724). Where the relation of attorney and client exists, the client is bound, according to the ordinary rules of agency, by the acts of his attorney within the scope of the attorney's authority. Accordingly, the client may be liable for a trespass committed by his attorney that he in no way authorized except by his general employment of the attorney, or for the tortious institution, continuation, or prosecution of legal proceedings to enforce the client's claim. 5 Am. Jur. 298, § 667; American Law Institute, Restatement, Agency, 564, § 253. A client may be liable where his attorney, in the course of his employment, causes an attachment to be sued out against the debtor of the client, and levied on property of one other than the debtor, as the property of the debtor. *Williams* v. *Inman,* 1 *Ga. App.* 321 (57 S. E. 1009). Where it appeared that the attorney knew, or had reasonable grounds for believing, that the property attached, and afterwards sold under judgment against the debtor on the attachment, did not belong to the debtor, but to the debtor's wife, the attorney was chargeable with notice of the wife's title, and notice to him would be notice to his client. *Jones* v. *Lamon,* 92 *Ga.* 529 (18 S. E. 423) ; *Citizens Bank of Vidalia* v. *Citizens &c. Bank,* 160 *Ga.* 109 (4), 118 (127 S. E. 219)."

Although Merchants' Protective Association was not an *attorney* of Colonial Stores Inc., as this word relates to the word *lawyer,* yet the jury was authorized to find it to be an *attorney* as this word relates to the word *agent* with duties very similar to those of an attorney at law, and it will be noted by the foregoing quoted excerpt from *Atlantic Co.* v. *Farris,* supra, that the principle there enunciated "is according to the ordinary rules of agency."

Where the relationship of principal and agent exists between two corporations, the principal is bound, according to the ordinary rules of agency, by the acts of its agent within the scope of the agent's authority. Accordingly, the principal may be liable for a tort that it in no way authorized except by its general employment of the agent, or for the tortious institution, continuation, or prosecution of legal proceedings to enforce a claim of the principal against a third person, provided the person acting

for the agent corporation has the authority to act for it. Also, the principal may become liable for an unauthorized act of the agent after full knowledge of such unauthorized act and ratification thereof by the principal.

Notwithstanding certain testimony of the defendant, Victor D. Young, to the effect that in swearing out the warrant he was acting for himself and not on behalf of the corporation which he represented, and to the effect that as president and manager of Merchants' Protective Association he gave himself instructions not to swear out warrants for the collection of checks of the defendant Colonial Stores Inc., and then proceeded to violate these instructions by swearing out said warrant, the testimony of said witness previously referred to herein, and the overall evidence in the case, authorized the jury to find that Victor D. Young, in swearing out said warrant, was acting within the scope of his authority as representative of Merchants' Protective Association, which in turn was acting within the scope of its authority as agent of Colonial Stores Inc., in the collection of the check in question. Therefore, the liability of the defendant Colonial Stores Inc., under the record of this case, was properly a question for the determination of the jury.