A95A1485. ROWE et al. v. CSX TRANSPORTATION, INC. et al.
(465 SE2d 476)

ANDREWS, Judge.

In this malicious prosecution and defamation case, plaintiffs Freddy Rowe and Cleo Brown appeal the trial court's order granting summary judgment to defendants CSX Transportation, Inc. ("CSX"), a railroad, and its detective, Robert Johnson.

This case arose in January 1992 when a Racine rail saw, used to cut rails, was stolen from a truck parked in the CSX railyard. Six months later, while investigating the theft, Johnson interviewed Fabian Terry, who stated that he got the saw from Willie, Jr. who said he bought it for $20 from Brown. Terry also told Johnson that the saw was on Rowe's property and Rowe knew it was stolen. After Johnson went to Rowe's house and asked about the saw, which had "Property of CSX" painted on it, Rowe admitted he had lent it to a friend and agreed to give it back to the railroad. At his deposition, Rowe testified that Johnson promised not to press any charges if he brought back the saw. Rowe returned the saw, but Johnson subsequently reported the results of his investigation to a county magistrate who issued arrest warrants for Rowe and Brown for receiving stolen property. After their arrest, the men waived their right to a preliminary hearing and posted bond. It is undisputed that Johnson did not attempt to contact Brown after receiving Terry's statement.

The criminal cases against Rowe and Brown ultimately were dismissed without prosecution because Johnson was unable to appear. In addition, the assistant district attorney prosecuting the case indicated that, because Brown had been incarcerated when the crime occurred, he felt the charges should be dropped. Rowe and Brown were subsequently indicted on the same charges, but the charges were again dismissed.

Rowe and Brown then commenced this action alleging malicious prosecution and defamation. CSX and Johnson moved for summary judgment, arguing that probable cause for the arrests existed based on the evidence and because Rowe and Brown waived their preliminary hearing. They also contended that Johnson lacked malice. CSX and Johnson further argued that, because the evidence showed Johnson made his statements in good faith in the performance of a public duty, summary judgment was warranted on the defamation claim. The trial court summarily granted the motion for summary judgment.

Rowe and Brown argue that the trial court erred in granting summary judgment because whether Johnson lacked probable cause to

prosecute them was a jury question. They also contend that disputed issues remain to be tried on malice. We disagree.

"[A]t summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate . . . that there is an absence of evidence to support at least one essential element of the non-moving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).

The essential elements of malicious prosecution are: "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff. [Cit.]" *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994). Lack of probable cause exists when the circumstances satisfy a reasonable person that the accuser had no ground for proceeding but a desire to injure the accused. OCGA § 51-7-43. Further, the return of an indictment is prima facie, though not conclusive, evidence of probable cause, as is the waiver of a preliminary hearing. *Smith v. Holeman*, 212 Ga. App. 158, 161 (6) (441 SE2d 487) (1994); *Garmon v. Warehouse Groceries Food Center*, 207 Ga. App. 89, 93 (427 SE2d 308) (1993).

Prima facie evidence of probable cause existed because Brown and Rowe were indicted by a grand jury and waived their preliminary hearing. Moreover, Terry's statements that he had acquired the saw from a man who bought it from Brown, the saw was located on Rowe's property, and Rowe knew it was stolen are also prima facie evidence of probable cause. In this procedural posture, the prima facie establishment of probable cause becomes conclusive if left unrebutted. *Garmon*, supra at 93 (2). Thus, the burden shifted to Brown and Rowe to " 'point to specific evidence giving rise to a triable issue.' . . . [Cits.]" Id. at 94; *Smith v. Trust Co. Bank*, 215 Ga. App. 413 (1) (450 SE2d 866) (1994).

The record reveals no such evidence. The dismissal of the charges against Brown due to his incarceration when the offense occurred does not create a dispute about the existence of probable cause. Brown's incarceration lasted from January 1992, when the saw was stolen, to February 1992. The saw was returned in June 1992. Because Brown was charged with theft by receiving, the fact that he was jailed on the date of the theft is irrelevant to the issue of probable cause. Nor does the reasonableness of Johnson's failure to corroborate Terry's statements give rise to a triable issue. In circumstances where a cursory investigation would have revealed physical or documentary evidence corroborating the factual defenses claimed by the accused, we have held that a reasonable person would be required to investigate further before initiating legal proceedings. *Garmon*, supra at 95;

see, e.g., *Bi-Lo, Inc. v. McConnell*, 199 Ga. App. 154 (2) (404 SE2d 327) (1991); *Atlantic Zayre v. Meeks*, 194 Ga. App. 267 (1) (390 SE2d 398) (1990). No such circumstances exist in this case. Because Brown and Rowe failed to offer evidence to rebut the prima facie proof of probable cause, no disputed issue of fact precluded summary judgment. *Akins v. Warren*, 258 Ga. 853 (4) (375 SE2d 605) (1989). This alone is fatal to their case.

In addition, however, no issues remain to be tried on the element of malice. Rowe and Brown base their argument that a jury must decide the issue of malice solely on inferences drawn from the purported absence of probable cause and Johnson's broken promise that Rowe would not be prosecuted if he returned the saw. Malice, however, cannot properly be inferred absent a total lack of probable cause. OCGA § 51-7-44; *Lolmaugh v. T.O.C. Retail*, 210 Ga. App. 605 (2) (436 SE2d 708) (1993). Moreover, Johnson presented undisputed evidence that he did not know Brown or Rowe prior to this investigation and bore them no ill will. *Kemp v. Rouse-Atlanta, Inc.*, 207 Ga. App. 876 (2) (429 SE2d 264) (1993). Brown and Rowe have presented no evidence of the requisite animus in response. Id. at 881 (4).

Further, the trial court's disposition of this case comports with public policy. "[M]alicious prosecution suits are not favored. It is public policy to encourage citizens to bring to justice those who are apparently guilty." *Monroe v. Sigler*, 256 Ga. 759, 761 (8) (353 SE2d 23) (1987). Accordingly, the trial court properly granted summary judgment.[1]

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., and Pope, P. J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of summary judgment. My review of the evidence persuades me that a jury should decide whether defendant Robert L. Johnson, Jr., the private detective for defendant CSX Transportation, Inc. ("CSXT"), failed to take reasonable steps to verify the information leading him to swear out arrest warrants alleging plaintiffs Freddy Rowe and Cleo Brown were guilty of theft by receiving the stolen property of CSXT.

Plaintiffs brought this tort action against defendant CSXT and defendant Robert L. Johnson, Jr., "in his individual and official capacity, [as] a Special Agent for [CSXT]," alleging in their verified complaint that plaintiff Freddy Rowe cooperated with defendant

---

[1] Inasmuch as Rowe and Brown failed to address the trial court's adjudication of their defamation claim in their appellate brief, we deem the issue abandoned and decline to reach it. Court of Appeals Rule 27 (c) (2).

Robert L. Johnson, Jr. in the investigation of a theft of CSXT property, a Racine rail saw, and that Freddy Rowe "did eventually locate said stolen equipment and cause same to be returned to the Meriwether County Sheriff as directed by [defendant Robert L. Johnson, Jr.]"; that defendant Robert L. Johnson, Jr. nevertheless "did make several sworn affidavits, and then requested and caused the issuance of two arrest warrants," leading to the arrest of each plaintiff for the offense of theft by receiving stolen property; that they were confined and incarcerated in the common jail; that the Meriwether Grand Jury returned indictments against both plaintiffs based upon the sworn affidavits of defendant Robert L. Johnson, Jr. but that these "indictments were dismissed by the prosecuting District Attorney." Allegedly as a consequence of defendants' intentional acts, each plaintiff has suffered embarrassment and humiliation in the general community. Plaintiffs sought general and punitive damages, the expenses of litigation, and pre-judgment interest.

In their verified answers, defendant Robert L. Johnson, Jr. and defendant CSXT admitted that plaintiff Freddy Rowe, "upon learning that he was a suspect in the theft of the Racine rail saw, did return the rail saw to the Meriwether County Sheriff." Defendants further admitted that defendant Robert L. Johnson, Jr. "during the course of his official duty as a CSXT police officer did present sworn testimony to the Grand Jury"; that indictments were returned; and that orders of nolle prosequi were entered as to these indictments after the Prosecuting Attorney declared "that he did not intend to prosecute . . . ," but denied the material allegations of defamation and malicious prosecution.

After a period of discovery, defendants jointly moved for summary judgment, supporting their motion with the affidavit of defendant Robert L. Johnson, Jr., who deposed that he is employed by CSXT as a Special Agent for Police and Special Services; that he is POST (Peace Officer's Standard Training) certified and authorized to carry a weapon and effectuate arrests; and that it is his responsibility to investigate crimes committed against CSXT and to report such offenses to local prosecutors so they may review them and decide whether to prosecute. Defendant Robert L. Johnson, Jr. investigated the theft of a Racine saw "from a truck while it was parked at the roadmaster's office in the CSXT yard in Manchester, Georgia, on or about January 6, 1992." Robert L. Johnson, Jr. questioned a young man named Fabian Terry, who told defendant that he, Fabian Terry, "had the rail saw, and had gotten it from 'Willie, Jr.', who had purchased it from Cleo Brown for $20.00." Robert L. Johnson, Jr. further deposed that "Fabian Terry provided to me signed statements implicating [plaintiffs] Freddy Rowe and Cleo Brown in the crime of theft by receiving stolen property. I turned these written statements over

to the office of the District Attorney for Meriwether County for their possible prosecution of these two suspects." Fabian Terry told Robert L. Johnson, Jr. that "the saw was on property belonging to Freddy Rowe[, . . . and that] Freddy Rowe knew the saw was on his property and also knew that it was stolen." When Robert L. Johnson, Jr. interviewed Freddy Rowe, Mr. Rowe told him that "he would get the saw back . . . and turn it in to the Sheriff's Department." Robert L. Johnson, Jr. expressly disavowed any personal animus toward the plaintiffs, explaining that his "only involvement with Mr. Rowe and Mr. Brown has been because information I discovered during my investigation of the rail saw theft led me to believe they were guilty of having received stolen property." Defendants also submitted the affidavit of Mark A. Gomez, a former Assistant District Attorney for the Coweta Judicial Circuit who "prosecuted Freddy Rowe and Cleo Brown on charges of theft by receiving stolen property, in connection with the theft of a [CSXT] Racine rail saw. . . ." Mark A. Gomez deposed: "I recall Fabian Terry stating that he had the rail saw and had gotten it from Cleo Brown. Fabian Terry said he was keeping the saw on property belonging to Freddy Rowe, and stated that Freddy Rowe knew the saw was there and knew it was stolen." Mark A. Gomez also deposed that he "received from Mr. Johnson statements signed by Fabian Terry implicating Cleo Brown and Freddy Rowe in the theft of the rail saw," although such signed statements do not appear of record.

Other undisputed facts are that defendant Robert L. Johnson, Jr. never spoke with plaintiff Cleo Brown before swearing out a warrant for his arrest. Cleo Brown testified at his deposition that he was brought in for questioning first by Officer Dixie Cole of the Manchester Police Department. She informed Cleo Brown that "the Railroad Man wanted [him]." Cleo Brown accompanied Officer Cole but they "couldn't never get in touch with [defendant Robert L. Johnson, Jr.], never could." Consequently, the police released Cleo Brown "to go on to work that day." After "another month or two," officers of the Meriwether County Sheriff's Office arrested Cleo Brown at work, only this time, "[t]hey locked [him] up. . . ." Cleo Brown testified that he has a record of petty thefts but no evidence was adduced in support of defendants' motion for summary judgment that Robert L. Johnson, Jr. knew of and relied upon Cleo Brown's record in charging him with theft by receiving the stolen CSXT saw. Cleo Brown denied all knowledge of the Racine saw and testified that he has "[n]ever been in possession of any Railroad property[.]"

Although Robert L. Johnson, Jr. did speak with plaintiff Freddy Rowe, who admitted knowledge of the location of the saw, Robert L. Johnson, Jr. never saw Freddy Rowe in possession of the saw, and Freddy Rowe never admitted any knowledge that the saw was stolen.

At his deposition, Freddy Rowe testified that Fabian Terry, "he come up with it, said that he got it from a Cleo Brown, and . . . I asked him, I said, 'Well, who is Cleo Brown?' [Fabian Terry] told me, 'A fellow who lived in Manchester.' I didn't even know Cleo Brown, . . . and Fabian told me that he had got the saw from him. Well, I didn't just have no reason not to believe him, and I figured that's where he got it." Freddy Rowe knew "the rail saw, it had a [CSXT] Railroad Sticker on it, which [he] figured that it could have been sold at a auction the same as [a] truck and tractor [in Freddy Rowe's yard]." When Robert L. Johnson, Jr. "came to the house and asked me about the saw . . . [h]e told me that Fabian told him that he [Fabian] brought it there without me [Freddy Rowe] knowin' it, . . . and he asked me would I get the saw and give it back to 'em, and I told him, 'Yeah.' [Robert L. Johnson, Jr.] said, 'If you'll just get the saw and bring it back,' he said, 'that's all I want. You've got my word there won't be no charges pressed against you at all.' I told him, 'Okay.' " Nevertheless, Freddy Rowe was arrested three weeks later. After his arrest but before the charges were dropped, Freddy Rowe spoke with Robert L. Johnson, Jr. by telephone. Freddy Rowe said: " 'I thought you give me your word that there wouldn't be no charges pressed against me.' He said, 'Things didn't work the way I thought they was.' "

Plaintiffs each posted bond shortly after arrest and did not pursue a preliminary hearing. The grand jury returned true bills charging plaintiffs Rowe and Brown with "[TH]EFT BY RECEIVING" stolen property. At the behest of Assistant District Attorney Gomez, however, the Meriwether Superior Court entered orders of "NOLLE PROSEQUI" as to both indictments on August 25, 1992.

In opposition to the motion, plaintiffs submitted a subsequent affidavit of former Assistant District Attorney Mark A. Gomez, who deposed that the indictment against Cleo Brown was dropped because it had been brought to his attention that Cleo Brown "was in confinement when the crime occurred." This fact is corroborated by a letter from D. Givens, Warden of the Meriwether County Correctional Institution, indicating that "Cleo Brown was incarcerated . . . from 12-04-91 thru 02-20-92." Mark A. Gomez further deposed that the decision to dismiss charges against Freddy Rowe was taken because "Mr. Robert L. Johnson, Jr., the railroad law enforcement officer, was the sole prosecuting officer involved in investigating this matter, and was unavailable to prosecute at arraignment." Mr. Gomez identified from the jacket of the Freddy Rowe indictment a "notation made by me in my own handwriting[.]" This notation recites: "Dismissed by ADA per officer's request[.] 24 July 92." Plaintiffs also submitted a sworn statement from Fabian Terry, who deposed that he "got the Racein [sic] rail saw from Cleo Brown and took it down to the room [where] I

was staying down at Freddy Rowe's and he didn't know the saw was there."

The trial court granted defendants' motion for summary judgment as to all claims and this appeal followed. For the following reasons, I conclude that the trial court erred in granting that motion.

1. "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." OCGA § 51-7-40. The essential elements to a cause of action under this Code section are: "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff. [Cit.]" *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293). In the case sub judice, plaintiffs contend the trial court erred in concluding no genuine issues of any material fact remained for jury determination with respect to their "claims for malicious prosecution. . . ." Specifically, they argue that a jury should determine whether Robert L. Johnson, Jr. acted without probable cause and with malice in swearing out the arrest warrants (and in testifying before the grand jury). It is plaintiffs' burden to establish genuine issues on both of these factual matters in order to obtain a reversal of the judgment under review. "There can be no recovery, even though the prosecution was malicious, if there was probable cause for it; and [even] if there was no probable cause, there can be no recovery if the prosecutor acted without malice. [Cits.]" *Ga. Loan & Trust Co. v. Johnston*, 116 Ga. 628, 630 (43 SE 27).

2. "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court." OCGA § 51-7-43. This Code section is not exhaustive[2] of all cases of the absence of probable cause but "undertakes to settle an [extreme] instance in which the court and the jury shall recognize the absence of probable cause." *Coleman v. Allen*, 79 Ga. 637, 640 (1), 641 (5 SE 204), interpreting the substantively identical provisions of § 2983 of the 1882 Code. Accord *Auld v. Colonial Stores*, 76 Ga. App. 329, 334 (2), 335 (45 SE2d 827), interpreting former Code Ann. § 105-802.

" 'Probable cause is that apparent state of facts existing after reasonable and proper inquiry; the prosecutor is under a duty of cau-

---

[2] Compare *Darnell v. Shirley*, 31 Ga. App. 764, 765 (5) (122 SE 252), where this Court, applying § 4440 of the Civil Code (1910), held that want of probable cause "exists *only* 'when the[se] circumstances . . .' " obtain. (Emphasis supplied.)

tion and avoidance of haste.' *Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205, 207 (163 SE2d 256) (1968)." *Voliton v. Piggly Wiggly,* 161 Ga. App. 813 (288 SE2d 924). " ' "While a prosecutor need not be fully satisfied of the truth of the charge that he makes in his affidavit, and is not required to have a sufficient statement of fact to guarantee a conviction, nevertheless, where slight diligence would have brought to his attention facts which would have shown conclusively that there could be no conviction, whether or not he is guilty of malicious prosecution is a question of fact to be determined by the jury." (Cit.)' *Voliton v. Piggly Wiggly,* 161 Ga. App. 813-814[, supra]. See also *Melton v. LaCalamito,* 158 Ga. App. 820, 823 (2) (b) (282 SE2d 393) (1981)." *Munford, Inc. v. Anglin,* 174 Ga. App. 290 (1), 291 (329 SE2d 526). While a prosecutor's reasonable belief that probable cause exists "is not inconsistent with a considerable element of doubt, [yet] it must be [based on] more than mere conjecture or unfounded suspicion. Beyond this, the belief must be supported by appearances known to the defendant at the time, and an arrest or prosecution instituted without probable cause cannot be justified by anything, short of guilt in fact, which comes to the knowledge of the defendant[-prosecutor] later. [Cit.]" *McGonagil v. Treadwell,* 216 Ga. App. 850, 853 (2), 854 (456 SE2d 260). "The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution or swearing out an arrest warrant, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification." (Citations and punctuation omitted.) *McGonagil v. Treadwell,* 216 Ga. App. 850, 853 (2), 854, supra. On the other hand, " '[e]ven if on instigating the prosecution the prosecutor had probable cause at the commencement, if he afterwards acquired knowledge, or the reasonable means of knowledge, that the charge was not well-founded, his continuation of the prosecution is evidence of the want of probable cause, requiring that the question be submitted to the jury.' . . . *Munford, Inc. v. Anglin,* 174 Ga. App. 290, 291 (1)[, supra]." *Fuller v. Jennings,* 213 Ga. App. 773, 775 (1), 776 (445 SE2d 796).

In the case sub judice, the subsequent return of true bills against the plaintiffs by the grand jury is "prima facie but not conclusive evidence that probable cause existed. . . . *Darnell v. Shirley,* [31 Ga. App. 764, 765 (7) (a) (122 SE 252)]." *Hill v. Trend Carpet,* 154 Ga. App. 446 (1) (268 SE2d 682). "This prima facie evidence could be

rebutted either by direct or circumstantial evidence." *Auld v. Colonial Stores,* 76 Ga. App. 329, 334 (2), 336, supra. The evidence submitted to establish probable cause to have Cleo Brown and Freddy Rowe arrested on suspicion of theft by receiving the stolen CSXT Racine rail saw is defendant Robert L. Johnson, Jr.'s affidavit that Fabian Terry told Mr. Johnson that he (Terry) got the saw from "Willie, Jr." who had gotten it from Cleo Brown for $20. It appears that this conversation occurred in June 1992, i.e., some six months after the theft itself. As noted above, defendants have failed to adduce the actual written statement of Fabian Terry as submitted to the Assistant District Attorney which "implicates" Freddy Rowe and Cleo Brown. Since the sworn statement of Fabian Terry is not of record, we are shown only defendant Johnson's conclusions that the words spoken by Fabian Terry provided any credible factual basis for concluding that either Cleo Brown or Freddy Rowe knew of the existence of the CSXT saw, knew that it was stolen, and intended to exercise dominion over it, knowing it was stolen. The statement of Fabian Terry as recited by Robert L. Johnson, Jr. is original evidence that their conversation took place. OCGA § 24-3-2. But it is hearsay as to any involvement by Cleo Brown as alleged by Fabian Terry via the unknown "Willie, Jr." OCGA § 24-3-1. "The rule in Georgia has been that [probable cause] may be based on hearsay information as long as there is a substantial basis for crediting the hearsay. *Devier v. State,* 247 Ga. 635, 637 (277 SE2d 729) (1981)." *Lewis v. State,* 255 Ga. 101, 104 (2), 105 (335 SE2d 560). It is my view, however, that defendant Robert L. Johnson, Jr.'s conclusory affidavit utterly fails to establish the veracity and basis of knowledge for Fabian Terry's allegation that plaintiff Freddy Rowe knew the saw was stolen. Likewise, the affidavit of Mark A. Gomez stating that Robert L. Johnson, Jr. had probable cause to swear out arrest warrants against plaintiffs is only his non-probative opinion as to a legal conclusion. See *Wells v. Metropolitan Life Ins. Co.,* 107 Ga. App. 826, 834 (131 SE2d 634).

As it is undisputed that defendant Johnson never interviewed plaintiff Cleo Brown and failed to establish his whereabouts at the time of the theft in January 1992, before swearing out an arrest warrant for suspicion of theft by receiving stolen property, a jury question is presented as to whether defendant Robert L. Johnson, Jr.'s actions were reasonable, proper, and sufficient under the circumstances, or whether the warrant was sworn out in haste and without proper caution, impermissibly based upon mere conjecture and unfounded suspicion. *McGonagil v. Treadwell,* 216 Ga. App. 850, 853 (2), 854, supra. Similarly, the record does not conclusively establish that Robert L. Johnson, Jr. had probable cause to suspect Freddy Rowe of knowingly receiving the stolen saw, since the unrefuted testimony of Freddy Rowe shows that Robert L. Johnson, Jr. told him

that Fabian Terry informed Robert L. Johnson, Jr. that Freddy Rowe did *not* know that the saw was stolen at the time Robert L. Johnson, Jr. spoke with Freddy Rowe. Consequently, a jury question exists as to whether Robert L. Johnson, Jr. should have corroborated Fabian Terry's statements, under his duty to exercise caution and avoid undue haste. "In order to later be insulated from liability because of the action of the [grand jury] in [returning true bills] in a malicious prosecution case, the defendant prosecutor 'must make a fair, full and complete statement of the facts as they exist. He is not relieved·if he conceals facts, nor if he distorts facts, nor if he is negligent in ascertaining facts.' *Hicks v. Brantley*, 102 Ga. 264, 273 (2) (29 SE 459) (1897)." *Martin v. Reitz*, 152 Ga. App. 854, 856 (264 SE2d 305). As a POST-certified law enforcement officer, Robert L. Johnson, Jr. may justly be deemed "even more knowledgeable than most as to the legal definitions of 'theft [by receiving]' and 'larceny[.]' " *Martin v. Reitz*, 152 Ga. App. 854, 856, supra. The nuance that distinguishes theft by receiving from other forms of larceny is the element of scienter, namely guilty knowledge that the goods are stolen. OCGA § 16-8-7 (a); *McGill v. State*, 106 Ga. App. 482, 483 (1) (127 SE2d 332). In the case sub judice, defendants' motion fails to adduce the underlying facts that would lead an officer of ordinary prudence and caution to accept at face value Fabian Terry's conclusory allegation that Freddy Rowe knew the saw was stolen.

3. "Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." OCGA § 51-7-2. "A total lack of probable cause is a circumstance from which malice may be inferred; however, the inference may be rebutted by proof." OCGA § 51-7-44. "This inference is one of fact to be drawn by a jury." *Auld v. Colonial Stores*, 76 Ga. App. 329, 337 (3), supra. In *Auld*, the plaintiff was charged in an accusation with being a swindler and a cheat, because his personal check, presented for payment more than two months after he drew it, was returned unpaid due to insufficient funds. There, although the prosecutor stated that his design was to deter others, the whole court agreed that "the only method by which the sincerity of this declaration can be tested is the surrounding circumstances throwing light upon the motive." *Auld v. Colonial Stores*, 76 Ga. App. 329, 337 (3). The whole court held that the circumstance where a prosecutor "expected to deter others by demonstrating to them how completely embarrassed they might become in winning the [criminal] case, and how much it might cost them in time, in worry and trouble defending it, and in cost of attorneys fees, etc., even though they should win . . . [would justify the jury] in finding that this kind of determent was within itself a malicious prosecution. It follow[ed] that malice may consist of a general disregard of the right and consideration of . . . a

portion of society, directed by chance against the individual injured." *Auld v. Colonial Stores*, 76 Ga. App. 329, 337 (3), supra. Compare *Mayor &c. of Savannah v. Wilson*, 214 Ga. App. 170, 172 (3) (447 SE2d 124). In the case sub judice, the jury would be authorized to conclude that Robert L. Johnson, Jr.'s broken promise to Freddy Rowe that no charges would be pressed if the saw were returned is some evidence of either personal spite or else that general disregard for the right consideration of mankind which amounts to malice in the eyes of the law. "From the circumstances present in this case, the jury could [similarly] infer malice [toward Cleo Brown]." *Melton v. LaCalamito*, 158 Ga. App. 820, 823 (2) (c), 824, supra. Furthermore, the jury may conclude that a total lack of probable cause to arrest him authorizes an inference of malice. "There is some evidence of lack of probable cause as well as [the existence] of malice. This is an appropriate case for jury resolution, and we [should] reverse the trial court's [grant of summary judgment]." *Fuller v. Jennings*, 213 Ga. App. 773, 775 (1), 777, supra. Accord *Jones v. Parrish*, 203 Ga. App. 566, 568 (1), 569 (417 SE2d 210). As my colleagues in the majority would nevertheless affirm, I respectfully dissent.

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED NOVEMBER 16, 1995 —
RECONSIDERATION DENIED DECEMBER 6, 1995 —

*Thomas R. Morgan, Jr., Joseph W. Jones, Jr.*, for appellants.
*Casey, Gilson & Williams, Matthew D. Williams, Sandra Gray*, for appellees.