A95A1748. NORTHERN TELECOM, INC. v. WILKERSON.
(466 SE2d 221)

ANDREWS, Judge.

We granted Northern Telecom's petition for interlocutory appeal to determine whether the trial court erred in denying its motion for judgment notwithstanding the verdict. We hold that it did and reverse.

Harold Wilkerson sued his employer Northern Telecom for malicious arrest. The case was tried to a jury, which awarded Wilkerson general damages of $80,000; special damages of $223,000; and punitive damages of $3,000,000. Northern Telecom filed a motion for j.n.o.v., or in the alternative for a new trial. On December 5, 1994, the trial court entered an order denying the motion for j.n.o.v. and conditionally granting the motion for new trial on the issue of punitive damages. Noting that it believed the jury award to be the result of "excessive passion," the court conditioned its grant of a new trial on the amount of punitive damages, upon Wilkerson's acceptance, within 30 days, of $500,000 as an appropriate amount of punitive damages. On January 4, 1995, the court clarified its earlier order stating that both parties were to agree to the election of $500,000 within 30 days. On February 7, 1995, the court entered a third order which found that the time period for accepting the amount had expired with no acceptance by the parties. Accordingly, the court found that the motion for j.n.o.v. was denied and that the alternative motion for new trial was granted as to the issue of the amount of punitive damages.

1. Northern Telecom argues that the trial court erred in denying its motion for j.n.o.v. because Wilkerson was unable to prove malice and lack of probable cause. In deciding whether the court should have granted Northern Telecom's motion for j.n.o.v., "[t]he primary ques-

tion for determination is whether the evidence introduced, with all reasonable deductions . . . demanded a verdict for the defendant, as the standards for granting a motion for judgment n.o.v. are the same as those governing direction of a verdict. The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a 'one way' verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts." (Citations and punctuation omitted.) *Famiglietti v. Brevard Med. Investors*, 197 Ga. App. 164 (1) (397 SE2d 720) (1990).

The evidence at trial, taken in the light most favorable to the jury's verdict, was as follows. Wilkerson began working for Northern Telecom on January 5, 1981, as a system tester in the test shop. On or around April 1989, Wilkerson went on disability leave for physical and mental stress. He was also going for counseling during this period and checking in periodically with Claire McCall, an occupational nurse in charge of administering the short-term disability plan for Northern Telecom.

On May 19, 1989, Wilkerson went to see McCall and was extremely agitated. He expressed a great deal of hostility and anger toward the company and employees, and, at one point, asked McCall if she knew that he owned a machine gun. Although he felt as though he had not really improved during his time off, Wilkerson returned to work on May 30, 1989. A few days after he returned, Wilkerson had an altercation at work with one of his co-workers, Todd Edwards. As a result of this incident, both Wilkerson and Edwards were reassigned. Wilkerson became extremely upset when Wes Weston, his section manager, told him of the reassignment. Dwight Clay, the manufacturing supervisor, testified that Wilkerson was crying and visibly trembling and even hit the door of one of the stockrooms with his fist. Clay further testified that Wilkerson said he was going to crack, threatened to get revenge and that he might get Wes Weston's wife while Wes was at work. Wilkerson admitted to telling Clay he had a gun in his truck, but he said that the reference was made in the context of shooting himself. Wilkerson also testified that he told Clay he was going to get a hat that said "Communications Workers of America" on it and would "get a union in here with bells and whistles."

Wilkerson then went to see nurse McCall. McCall testified that Wilkerson was very agitated and kept talking about having an arsenal and knowing where other employees lived and what to do with it. Mc-

Call further testified that, at one point, Wilkerson told her that he felt homicidal.

After talking to Wilkerson, Clay became concerned about the situation and talked to two other managers about what action to take. One of them suggested he go to Nigel Taylor, the general manager from Canada who was currently at the plant for an operations review. After hearing Clay's report, Taylor called in Don Kellett, the manager responsible for security at the plant. Clay was asked if he felt that Wilkerson was a threat and he replied yes, he did. It was determined that the safest course of action would be to keep Wilkerson off Northern Telecom property for the time being. Taylor sent Clay and Kellett to the police station to report these facts to the police. Clay signed an affidavit in which he described Wilkerson's threats, specifically those against Wes Weston and his wife. The police issued an arrest warrant for simple assault. On June 7, 1989, Wilkerson was arrested. On October 19, 1989, Northern Telecom dropped the charges against him.

Northern Telecom argues that its motion for j.n.o.v. was improperly denied since there was no evidence of malice or lack of probable cause upon which to maintain the action. Citing *Mayor &c. of Savannah v. Wilson*, 214 Ga. App. 170 (4) (447 SE2d 124) (1994), Northern Telecom contends that the circumstantial evidence presented by Wilkerson at trial was insufficient to withstand its motion for j.n.o.v., in light of the *direct* evidence Northern Telecom presented with regard to the lack of malice. In *Mayor &c. of Savannah*, supra, the court stated that in order to maintain an action for malicious arrest, lack of probable cause and "some evidence of the animus required by OCGA §§ 51-7-2 and 51-7-3 must be shown." "Lack of probable cause is defined in OCGA § 51-7-43 as existing when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Unless the facts regarding probable cause are undisputed, it is a question for the jury. However, where there is no evidence of malice other than such inference as may be drawn from proof of the want of probable cause, and that proof shows some circumstances pointing to the guilt of the accused, although insufficient to exclude every other reasonable hypothesis, the essential ingredient of malice is not so established as to entitle the plaintiff in an action for false arrest to recover." (Citations and punctuation omitted.) *Mayor &c. of Savannah*, supra at 173.

Wilkerson argues that the reason for the arrest was that Northern Telecom had learned that Wilkerson stated he was going to wear a "Communications Workers of America" hat to work and that he was threatening to bring the union to the company. Wilkerson also states that he was arrested simply to keep him off company property. He contends that in light of the stringent standard for granting a mo-

tion for j.n.o.v., the decision of the trial court should stand.

Here, even viewing the evidence in the light most favorable to the verdict, it is clear that Northern Telecom had probable cause to go to the police about this situation. Nurse McCall's testimony is uncontroverted as to her reports to management about Wilkerson's threats and the danger he posed to others and himself. Wilkerson admitted being very upset after learning of his reassignment. He admitted talking about a gun. Northern Telecom had a duty to Wilkerson and its other employees to report this to the police. Further, the decision to issue an arrest warrant for simple assault, rather than another violation more in keeping with the circumstances, was made by the police and the magistrate, and Dwight Clay and Northern Telecom were not parties to this decision. In any event, it has no bearing on the fact that, given Wilkerson's fragile emotional state, Northern Telecom was justified and had probable cause to go to the police and swear out a warrant.

In addition, we find Wilkerson was unable to show any malice on the part of Northern Telecom. The sole basis for Wilkerson's contention that Northern Telecom acted with malice in causing him to be arrested is his claim that Northern Telecom did not want him attempting to bring the union into the plant. However, Clay's uncontroverted testimony was that during the meeting with Nigel Taylor, no one mentioned any threat by Wilkerson to bring in the union. The only evidence adduced at trial on this issue was Wes Weston's testimony that Northern Telecom had a plan for countering union activity, Barbara Wilkerson's testimony that union participation was discouraged, and Wilkerson's own testimony as to how the company reacted to union activity. There was absolutely no testimony or other evidence introduced at trial that linked Wilkerson's threat to "wear a C.W.A. hat to work" to Northern Telecom's decision to report Wilkerson's behavior and threats to the police.

Further, Wilkerson sued Clay individually and as an agent of Northern Telecom for falsely and maliciously swearing out the warrant. However, the jury found in favor of Clay and awarded damages only against Northern Telecom. Since Clay, with verification from nurse McCall, provided all of the information upon which Taylor based his decision to go to the police and it was Clay who swore out the affidavit in support of the warrant, it is difficult to reconcile the jury's finding that Clay was not liable of falsely and maliciously swearing out a warrant but Northern Telecom was.[1]

In addition, even discounting the testimony of Dwight Clay, there

---

[1] This seemingly contradictory verdict, together with the trial judge's finding that the award for punitive damages was the result of excessive passion, would seem to indicate that the jury did not follow instructions as charged when reaching its verdict.

was still the unequivocal and uncontroverted testimony of nurse Mc-Call and even Wilkerson himself which showed that Wilkerson was in a very agitated and violent state of mind. Northern Telecom would not have been justified in ignoring these signs of emotional instability and threatened physical violence.

Therefore, because Wilkerson introduced no evidence that Northern Telecom acted with malice or lack of probable cause when they had him arrested, he was unable to prove liability in his claim of malicious arrest. Accordingly, the trial court erred in denying Northern Telecom's motion for j.n.o.v. on the issue of liability.

2. Because we find that the trial court erred in denying Northern Telecom's motion for j.n.o.v. on the issue of liability, we need not address the following enumerations of error.

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Johnson and Smith, JJ., concur. McMurray, P. J., Pope, P. J., Blackburn and Ruffin, JJ., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the majority's judgment reversing the trial court's denial of defendant's motion for judgment notwithstanding the verdict in plaintiff Harold Wilkerson's successful action for malicious arrest against his former employer. "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80. In addition to the facts recited by the majority, I note that plaintiff was informed by the personnel manager, Wes Weston, that plaintiff would be demoted and have his pay reduced after an altercation with his co-employee, Todd Edwards. This disciplinary action was taken despite Wes Weston's belief that "Todd had provoked [plaintiff], and he instigated it[.]" Plaintiff's outrage at this perceived injustice reflects on the meaning to be attached to any words he subsequently uttered in anger to (or in the presence of) co-defendant Dwight Clay. At trial, plaintiff denied threatening anyone. The jury was thus authorized to believe that any mention of the gun in plaintiff's truck was a histrionic reference to suicide, not terroristic threats directed at anyone else.

Dwight Clay's testimony before the magistrate resulted in the issuance of a warrant for plaintiff's arrest for a simple assault committed against Wes Weston. According to the facts recited in the warrant, Dwight Clay told the magistrate that plaintiff said to him (Dwight Clay) that he (plaintiff) "had a gun in his truck and had [a] good mind to get it [and] use it[; that] revenge was his and that in 6 hours, days or months he would use it[; that] he knew where Wes Weston lived [and] might 'get his wife' while Wes was at work." This warrant is thus based solely upon plaintiff's conversation with Dwight Clay and not upon any word or act committed in the presence of the

purported victim, Wes Weston. In my view, this evidence utterly fails, as a matter of law, to establish probable cause to believe that Wes Weston was placed in a reasonable apprehension of receiving any imminent bodily injury, based upon plaintiff's apparent present capacity to inflict such injury. See, e.g., *Johnson v. State*, 158 Ga. App. 432, 433 (280 SE2d 856); OCGA § 16-5-20 (a) (2). The magistrate in the case sub judice erred in issuing a warrant for simple assault based upon this evidence, and the erroneous issuance of that warrant eliminates it as a prima facie case of probable cause. The total lack of probable cause is a circumstance from which the jury may infer malice. OCGA § 51-7-44; *Auld v. Colonial Stores*, 76 Ga. App. 329, 337 (3) (45 SE2d 827).

Moreover, the absence of probable cause is *not* the only evidence of malice in the case sub judice. Although Dwight Clay denied that the anti-union sentiments of Northern Telecom, Inc. played any role in his decision to seek a warrant, this presented a credibility question for the jury. Plaintiff and his wife presented uncontradicted evidence of Northern Telecom's strong anti-union corporate culture. Northern Telecom made it "very adamant they did not want a union." When he was a supervisor, plaintiff was expected to be a snitch with respect to pro-union employees. In my view, this is sufficient independent evidence of malice to support the jury's determination that plaintiff's arrest was ordered by defendant's agents with that "general disregard of the right and consideration of mankind, or a portion of society," directed against the plaintiff. *Auld v. Colonial Stores*, 76 Ga. App. 329, 337 (3), supra. Certainly, we cannot hold this evidence of Northern Telecom's corporate culture is wholly irrelevant, as a matter of law, to its collective decision in swearing out an arrest warrant for perceived threats uttered outside the presence of the purported victims. It is an old and sound rule that this Court will not speculate as to what evidence the jury chose to believe. See generally *Whelchel v. Thomas Ford Tractor*, 190 Ga. App. 156 (1) (378 SE2d 510). "A jury should not be precluded from putting two and two together[.]" *Southern R. Co. v. Newman*, 187 Ga. 132 (1), 133 (199 SE 753). Moreover, in determining whether that independent evidence of malice afforded a sufficient nexus to the issuance of an arrest warrant without probable cause, " '[a] jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration.' *Sappington v. Bell*, 115 Ga. 856 (1) (42 SE 233)." *Reaves v. Columbus Elec. &c. Co.*, 32 Ga. App. 140, 151 (122 SE 824). It is my view, however, that the majority strays from the relevant and permissible appellate inquiry and improperly speculates on which type of evidence of malice the jury in the case

sub judice found credible. "The Court of Appeals shall be a court of review. . . ." Art. VI, Sec. V, Par. III, Ga. Const. of 1983. " 'This court has repeatedly ruled that in the absence of legal error, it has no jurisdiction to interfere with a verdict supported by some evidence, although the verdict was against the preponderance of the evidence. The decisions . . . to the contrary . . were rendered prior to the constitutional amendment restricting the jurisdiction of [the Supreme Court of Georgia] and this court to the decision of errors of law and equity, and are not now in point.' *Wilson v. Barnard*, 10 Ga. App. 98 (8) (72 SE 943)." *Black v. Duncan*, 79 Ga. App. 342 (53 SE2d 726). Since, in the case sub judice, there is evidence of malice beyond the total lack of probable cause, the juxtaposition of "direct" versus "circumstantial" evidence of malice arising *solely* from the absence of probable cause is simply inapposite and the majority's reliance on *Mayor &c. of Savannah v. Wilson*, 214 Ga. App. 170, 172 (4) (447 SE2d 124) is misplaced. We are unauthorized to disturb this verdict on the grounds urged by defendant, and so I respectfully dissent from the judgment of reversal as the trial court was correct and should be affirmed.

I am authorized to state that Presiding Judge Pope, Judge Blackburn, and Judge Ruffin join in this dissent.

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Long, Aldridge & Norman, Phillip A. Bradley, Harold N. Hill, Jr., R. Daniel Beale*, for appellant.

*Smith, Howard & Ajax, Bruce H. Beerman, Thomas & McDonald, Diana Y. McDonald-Burks, Walter H. Hotz*, for appellee.