A02A1755. GIBBS v. LOOMIS, FARGO & COMPANY et al.
(576 SE2d 589)

RUFFIN, Presiding Judge.

Andres Gibbs sued Loomis, Fargo & Company f/k/a Wells Fargo Armored Service Corporation ("Loomis Fargo") and two former Loomis Fargo employees for malicious prosecution. The trial court granted the defendants' motion for summary judgment, and Gibbs appeals. For reasons that follow, we affirm.

Summary judgment is appropriate if the evidence, construed favorably to the nonmoving party, shows that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law.[1] Viewed in this light, the record shows that Loomis Fargo is an armored truck company that processes bank deposits for other businesses. Loomis Fargo picks up money from its customers and then counts, consolidates, and delivers the funds to various banks.

On February 2, 1996, Gibbs worked as a Loomis Fargo "messenger," transporting deposits from the Loomis Fargo consolidation facility to various banks. The evidence shows that tellers in the consolidation room count a customer's money, verify that the amount matches the corresponding bank deposit slip, and generate a manifest that accompanies the money. Another teller then checks the count, the money is sealed in a bag, and the bag is placed in a "holding room" until a messenger takes it to a bank. Pursuant to Loomis Fargo standard procedures, the original counting teller should list each bag placed in the holding room on a messenger control sheet.

At approximately 10:15 a.m. on February 2, Gibbs entered the consolidation room. According to Gibbs, an employee opened the holding room door and instructed him to deliver the four bags in the corner to the appropriate banks. Gibbs testified that he retrieved the four bags, compared them to the manifests and the messenger control sheet, and signed those documents. Gibbs then gave the executed forms to the lead teller, Dietra Robinson, and left the facility.

---

[1] See OCGA § 9-11-56 (c); *Holmes v. Achor Center*, 249 Ga. App. 184, 187 (2) (547 SE2d 332) (2001).

After Gibbs departed, Robinson informed the operations manager, Michael Reynolds, that a bag containing $14,910 was missing. Reynolds immediately investigated the situation, assuming that "everybody [was] a suspect until [they could] prove something otherwise."

Reynolds determined that the missing money had been delivered to the consolidation room that morning. His investigation further revealed that Suzette Kelsey counted the money and Ronda Young verified Kelsey's count. According to both Kelsey and Young, Young then placed the funds, which had been sealed in a Loomis Fargo money bag, in the holding room. Apparently, neither Kelsey nor Young recorded the bag on the messenger control sheet. No documentary evidence, therefore, specifically shows that the bag entered the holding room. Reynolds, however, reviewed footage from security cameras in the consolidation and holding rooms, which, he testified, took still photographs every ten to fifteen seconds.[2] Based on the time stamped on the security photographs and money processing documents, Reynolds concluded that Young placed the missing bag in the holding room at approximately 8:19 a.m.

Reynolds searched the consolidation room, employee lockers, Kelsey's teller booth, and the garbage cans in the area. In addition, he questioned Robinson, Kelsey, and Young, obtained written statements from them, searched their clothing, and, he believes, searched their cars. Reynolds also contacted Gibbs, who was still delivering deposits, over the radio. Gibbs reported that he did not have the missing bag. When Gibbs returned to the facility, Reynolds questioned him, searched his armored van, and searched his personal car, but did not find the bag. Again, Gibbs denied knowing anything about the missing bag, asserting that he removed, signed for, and properly delivered four bags of money.

Without dispute, Gibbs entered the holding room at around 10:15 a.m. Based on his investigation, including his review of security camera photographs from both the consolidation room and the holding room, Reynolds concluded "that nobody else [except Gibbs had] access to the bag." In his investigative report, Reynolds stated that "five packages of money [were] prepared for delivery to Nations-Bank CMV (4) and Bank South (1). The messenger [Gibbs] took all items from consolidation room but signed for four items. The fifth manifest is completely missing." In another report, Reynolds noted that "[a]fter reviewing the film of the transaction, it is clearly seen that all items were removed [by Gibbs] from the [holding] room."

---

[2] Reynolds believes that the cameras were set to take a new photograph every ten to fifteen seconds. The evidence shows, however, that the cameras could be programmed for a longer delay between photographs.

Reynolds further stated that Young failed to list the missing bag on the messenger control sheet and did not properly monitor Gibbs. According to Reynolds' report, these procedural breaches "created an opportunity for [Gibbs] to take the [missing] bag along with the complete paperwork."

Harvey Spinks, a Loomis Fargo security agent, also investigated the theft. Like Reynolds, Spinks issued a report finding that the missing bag was put in the holding room along with four other bags and that the subject bag and manifest "disappeared after Gibbs went into the locked room." According to the report, Gibbs told Spinks during an interview that he did not know anything about the missing bag, but " '[i]f he picked up all 5 bags, then he must have dropped one and someone else took it.' " In his deposition, Gibbs denied making this statement to Spinks.

On February 14, 1996, Spinks met with Detective Larry Moore of the Atlanta Police Department regarding the missing money.[3] During that meeting, Spinks gave Moore the internal Loomis Fargo reports and presented the evidence gathered during the investigation, including the security camera footage. When the two men reviewed the footage, Moore relied on Spinks' interpretation of what was depicted. After the meeting, Spinks made copies of the holding room photographs for Moore. At that point, he discovered that six — rather than five — bags were in the room before Gibbs arrived, and one bag remained after he left. Spinks relayed this information to Moore, who testified that, from his review of the security camera footage, it also appeared that the holding room contained six bags when Gibbs entered, but only one after he departed.

Based upon information provided by the defendants, Moore obtained a warrant for Gibbs' arrest. The grand jury returned an indictment charging Gibbs with theft, but the district attorney's office eventually placed the case on a dead docket. Apparently, Loomis Fargo never located the missing bag.

Gibbs subsequently filed this lawsuit, alleging that Loomis Fargo, Reynolds, and Spinks maliciously prosecuted the criminal case. After discovery, the trial court granted the defendants' summary judgment motion, concluding that probable cause existed for the arrest and that Gibbs presented no evidence of malice. Because we find that the defendants had probable cause to believe Gibbs guilty, we affirm.

A malicious prosecution claim has six essential elements: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5)

---

[3] Reynolds initially reported the theft to police on the afternoon of February 2, 1996.

that terminated in the plaintiff's favor; and (6) caused the plaintiff damage.[4] In determining whether probable cause existed,

> the question is, not whether plaintiff was guilty, but whether defendants had *reasonable cause to so believe* — whether the circumstances were such as to create in the mind of defendants a *reasonable belief* that there was probable cause for the arrest and prosecution. Probable cause is defined to be the existence of such facts and circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was arrested and prosecuted.[5]

The probable cause inquiry thus focuses on "whether the facts *as they appeared at the time of instituting the prosecution* were such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged."[6]

The record shows that Reynolds spent approximately three hours reviewing security camera footage to track the missing bag through the Loomis Fargo processing center. Based on the photographs, Reynolds determined that the missing funds were counted by Kelsey and checked by Young, who placed them in the holding room. Kelsey and Young both verified this chain of events. Reynolds further concluded from the security tape footage that no one removed any bags from the holding room before Gibbs entered. In the photographs, Reynolds saw five bags in the holding room prior to Gibbs' entry, and he noted that all five were gone when Gibbs left.

Spinks also spent one to two hours reviewing the security camera photographs. He saw Young take the missing money bag from Kelsey, verify Kelsey's count, and place the bag in the holding room. Like Reynolds, he determined from the photographs that no one removed anything from the holding room until Gibbs entered. According to Spinks, six bags were in the holding room at that point, and only one remained after Gibbs left.

Based on the facts developed during the investigation, therefore, it appeared to both Reynolds and Spinks that Gibbs removed five bags from the holding room, but only signed for four. We agree with the trial court that these facts would lead a person of ordinary caution to entertain a belief that Gibbs was guilty of the theft.[7]

---

[4] See *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994).

[5] (Punctuation omitted.) *Smith v. Trust Co. Bank*, 215 Ga. App. 413, 415 (1) (450 SE2d 866) (1994).

[6] (Emphasis supplied.) *Blackford*, supra at 613-614.

[7] See id.; *Smith*, supra at 416.

On appeal, Gibbs argues that questions of fact remain as to how many money bags actually were placed in and removed from the holding room. He further claims that because no *documentary* evidence — such as the messenger control sheet — established that the missing bag was put in the holding room, a question of fact remains as to whether the bag ever reached that room. As noted above, however, the key question is not whether Gibbs was guilty, but whether the defendants reasonably believed him guilty.[8] And the record undisputedly shows that Reynolds and Spinks tracked the bag to the holding room, and they, as well as Detective Moore, concluded from the photographs that five bags visible in the room before Gibbs entered were gone after he exited. Given these findings, the defendants reasonably believed at the time that Gibbs took five bags from the holding room, signed for only four, and absconded with the missing bag.[9]

Gibbs further argues that the security camera evidence could not "establish whether the missing bag was ever in the holding room" because the manifests accompanying each bag are illegible in the photographs, the holding room camera failed to cover the entire room, the cameras did not stamp the correct time on the photographs, and the photographs do not clearly show how many bags Gibbs carried out of the room. Again, however, these arguments primarily concern whether Gibbs was, in fact, guilty of theft — an irrelevant issue in this appeal. Furthermore, the record shows that the defendants addressed these issues during their investigation. Although the missing bag's manifest was not visible in the photographs, Reynolds determined that the bag reached the holding room by analyzing time stamps on the consolidation room photographs and the processing documents. And although Reynolds noted that the time stamped on the relevant photographs was "off" by a certain number of minutes, he reconciled the time difference by comparing the current time shown on the security camera screens to his own watch. Finally, although no photograph clearly showed Gibbs with five bags in his hands, both Reynolds and Spinks determined, based on the number of bags evident before and after Gibbs left the holding room, that Gibbs removed five bags.

Gibbs also challenges the reasonableness of the defendants' investigation. Under Georgia law, "[i]f a reasonable person would

---

[8] See id. at 415.

[9] As Gibbs notes on appeal, the defendants initially believed that the holding room contained only five bags when Gibbs entered, but later determined that six bags could be seen in the security photographs. This evidence does not create a question of fact as to probable cause. Under either scenario, the defendants concluded that five bags left the room with Gibbs.

have investigated to determine if probable cause existed prior to urging an arrest and prosecution, then such failure to make an investigation may . . . go to whether probable cause existed."[10] Information that appears reliable after a reasonable inquiry, however, need not be verified through further investigation.[11]

The record shows, as a matter of law, that the defendants conducted a reasonable inquiry here. Specifically, they tracked the missing money to the consolidation room, searched that area, and questioned all individuals who, based on the security camera footage, came into contact with it. In addition, Reynolds, Spinks, and Detective Moore concluded from the security photographs that Gibbs removed five bags from the holding room. Given the photographic evidence, we cannot find the defendants' failure to investigate further unreasonable. Moreover, Gibbs has pointed to no evidence that any additional investigation "would have revealed physical or documentary evidence corroborating" his factual defenses to the criminal prosecution.[12]

Finally, Gibbs claims that questions of fact remain as to whether the defendants presented false information to the police, undermining probable cause. First, he asserts that Reynolds did not orally disclose all relevant facts when initially reporting the crime to the police. The evidence shows, however, that the defendants gave Detective Moore the investigative reports prepared by Reynolds and Spinks, which detailed their findings and conclusions.

Gibbs also argues that Spinks falsely informed Detective Moore that Gibbs stated: " '[i]f [I] picked up all 5 bags, then [I] must have dropped one and someone else took it.' " According to Gibbs, he never made the statement. Even construed favorably to Gibbs, however, this statement does not preclude summary judgment.

Evidence that a malicious prosecution defendant misrepresented material information to the police raises a factual issue as to whether the defendant had a reasonable and honest belief regarding probable cause.[13] But in this case, no jury question remains. The alleged misrepresentation did not conflict with Gibbs' ultimate denial that he took the missing money, and Spinks conveyed this denial to the police.[14] Furthermore, the defendants' investigation produced signifi-

---

[10] *Corporate Property Investors v. Milon*, 249 Ga. App. 699, 703 (1) (c) (549 SE2d 157) (2001) (physical precedent only). See also *Fleming v. U-Haul Co. of Ga.*, 246 Ga. App. 681, 684 (3) (541 SE2d 75) (2000).

[11] See *Milon*, supra at 704; *McClelland v. Courson's 441 South Station*, 248 Ga. App. 170, 172 (546 SE2d 300) (2001).

[12] *Rowe v. CSX Transp.*, 219 Ga. App. 380, 381 (465 SE2d 476) (1995).

[13] See *Willis v. Brassell*, 220 Ga. App. 348, 353 (4) (469 SE2d 733) (1996).

[14] Cf. *Holmes*, supra at 191 (question of fact regarding malicious prosecution raised by evidence that alleged assault victim lied to police about whether plaintiff threatened him

cant photographic evidence supporting their belief that Gibbs was guilty of the charged offense. And at his deposition, Gibbs acknowledged that he had no reason to doubt that Reynolds and Spinks "truly believed [he] had stolen the money." Under these circumstances, we cannot find the misrepresentation sufficiently material to undermine the reasonableness — or honesty — of the defendants' belief regarding probable cause.[15]

As we have noted, "'[m]alicious prosecution suits are not favored. It is public policy to encourage citizens to bring to justice those who are apparently guilty.'"[16] Because the defendants had probable cause to believe Gibbs guilty of theft, the trial court properly granted them summary judgment.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JANUARY 10, 2003 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Hewitt, Katz, Stepp & Wright, Robert N. Katz*, for appellant.
*Swift, Currie, McGhee & Hiers, Lynn M. Roberson*, for appellees.

---

with a gun); *Willis*, supra (evidence that malicious prosecution defendant falsified information regarding description of criminal trespass suspect raised question of fact regarding defendant's reasonable cause to believe plaintiff guilty of crime).

[15] Given Spinks' alleged misrepresentation, however, we have not factored Gibbs' indictment into our probable cause analysis. Although an indictment generally provides prima facie evidence of probable cause, it does not insulate a defendant from malicious prosecution liability if the defendant concealed or distorted the facts given to police and, presumably, the grand jury. See *Fleming*, supra at 683.

[16] *Rowe*, supra at 382.