A08A1305. BARNETTE et al. v. COASTAL HEMATOLOGY
& ONCOLOGY, P.C. et al.

(670 SE2d 217)

ADAMS, Judge.

Deborah Barnette and Susan Hilliard Hendrix brought a claim for malicious prosecution against Coastal Hematology & Oncology, P.C. and Dr. Brian Kim. The trial court granted summary judgment in favor of the defendants, and Barnette and Hendrix appeal.

In considering this appeal, we must conduct a de novo review, viewing the evidence and the inferences drawn from it in the light most favorable to Barnette and Hendrix, the nonmoving parties. *Williams v. Ngo*, 289 Ga. App. 44 (656 SE2d 193) (2007). So viewed, the evidence shows that Barnette worked as an office manager at Coastal from 1998 until September 2002. Part of her job duties included issuing paychecks, handling payroll and maintaining personnel files. During the early stage of her employment, Barnette reported primarily to Kim. Hendrix, who is Barnette's daughter, first began to work for Coastal in 1998 as a part-time billing clerk during her school vacations. Kim specifically approved Barnette's decision to hire Hendrix at this time. But at some point, a conflict arose between Hendrix and another Coastal employee. The other employee was full-time, and Hendrix was only part-time. Kim ultimately decided to terminate Hendrix's employment. Barnette remained at Coastal, and Kim stated that during this period he was "absolutely" satisfied with her work.

In 2002, Coastal hired Howard Werner[1] as the practice's chief operating officer, and Barnette began reporting directly to Werner, not to Kim. Kim affirmed that Werner was Barnette's immediate supervisor, but stated that Werner ultimately answered to Coastal's partners and could not properly act without their approval. Nevertheless, Kim admitted that Barnette was entitled to rely upon Werner's representations on the assumption that Werner had cleared matters with the partners. In January 2002, Barnette's salary was approximately $81,000 per year, but after Werner was hired, Barnette began receiving an increased salary of $85,000. Barnette stated that Werner approved this increase, but she con-

---

[1] Werner is also sometimes referred to as "Warner" in the record and briefs.

cedes that Kim may not have known about the pay raise.[2]

Sometime later, Coastal began compiling a compliance manual in accordance with the provisions of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 USC § 1320d et seq., and Werner was one of the employees placed in charge of this task. The events surrounding the preparation of this manual are in conflict. Barnette stated that with Werner's approval, she hired Hendrix to act as a consultant in preparing the manual.[3] Barnette explained that due to the earlier conflict with the other Coastal employee, Hendrix worked primarily from home, compiling and typing information for the manual. According to Barnette, Werner approved paying Hendrix $14 per hour for her work and she said that Hendrix delivered the completed manual in August 2002.

Kim, however, denied any knowledge that Hendrix was hired to work on the HIPAA manual. He said that another employee, Wanda Cooper, produced the manual for the practice. And both Barnette and Hendrix acknowledge that Kim may not have been aware of Hendrix's involvement. Moreover, Wanda Cooper confirmed that she worked on preparing Coastal's HIPAA manual. She stated that she had no knowledge that Hendrix had been hired to work on the manual; neither Barnette nor Werner ever told her that Hendrix was involved. Cooper never saw a HIPAA manual prepared by Hendrix, nor did she ever meet with Hendrix to discuss the manual. Cooper said that Coastal eventually employed an outside consultant to finish the manual by the required deadline, and none of the materials Coastal provided the consultant were prepared by Hendrix.

In September 2002, Coastal made the decision to terminate Barnette, primarily as a cost-cutting measure, but her negotiated severance agreement stated that she voluntarily resigned. Under the agreement, which Barnette and Kim both signed, she was to receive six months' severance pay based upon a salary of $81,375 per year.

Subsequently, Pam Swicord, Barnette's administrative assistant, became Coastal's office manager. While reviewing Coastal's 2002 tax documents, Swicord observed that the practice had paid Hendrix approximately $17,000 during fiscal 2002. Swicord was unaware that Hendrix had worked for Coastal during that time. Neither Barnette nor Werner had informed her that Hendrix was working on a HIPAA compliance manual. Swicord brought the matter to the attention of Kim and Werner, who both denied that

---

[2] Werner is not a party to this litigation, nor does the record contain any testimony from him.

[3] The record contains evidence that Werner told an administrator at another medical practice that Hendrix had prepared Coastal's HIPAA manual and even shared part of Hendrix's work with the administrator.

Hendrix had worked for Coastal during 2002 or that she was entitled to compensation.

Coastal later contacted the Savannah Chatham Police Department about the $17,000 payment to Hendrix and Barnette's 2002 pay raise. Detective Robert Chandler of the department's financial crimes unit signed an affidavit stating that Werner contacted him concerning a possible criminal matter relating to these payments. The detective subsequently met with Kim and Werner. Kim told Chandler he had no knowledge of any work Hendrix had performed on the HIPAA manual, nor was he aware of Barnette's pay raise. Chandler reviewed Coastal's accounting records and confirmed that these payments had been made. Both Kim and Werner stated that although the books showed that Barnette was receiving a yearly salary of $85,000, she was only authorized to receive approximately $81,000.

Chandler conducted further interviews with Swicord and other Coastal employees, none of whom was aware of any work Hendrix had done for Coastal on the HIPAA manual. During these interviews, he learned that Coastal had previously terminated Hendrix's employment. Chandler also interviewed Barnette, who, according to the detective, confirmed that she had hired Hendrix on Coastal's behalf without the acknowledgment or permission of Kim or anyone else at Coastal. Barnette denies making such a statement.

Chandler averred that although Kim wished to press charges, he "would not have pursued the prosecution unless I, in the exercise of my independent judgment, concluded that there was a reasonable basis to proceed." He stated that based upon his own investigation, he presented the file to the district attorney "for review and consideration and possible presentation to the Chatham County Grand Jury." The grand jury subsequently indicted Barnette and Hendrix on eleven counts of computer theft and three counts of computer forgery. The charges were dismissed in February 2005 by orders of nolle prosequi, and Barnette and Hendrix subsequently brought this action.

In order to state a claim for malicious prosecution in Georgia, a plaintiff must show "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." (Citation omitted.) *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994). See also OCGA § 51-7-40. The requisite "[m]alice may be inferred from a *total* lack of probable cause, OCGA § 51-7-44. . . ." (Emphasis in original.) *K Mart Corp. v. Griffin*, 189 Ga. App. 225, 226 (375 SE2d 257) (1988). Thus, "[t]he gravamen of the complaint is the absence of probable cause on the part of the

person instituting the prosecution." (Citations omitted.) *Wal-Mart Stores v. Blackford*, 264 Ga. at 613.

Under OCGA § 51-7-3, the lack of probable cause exists "when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court."

> But, what facts and circumstances amount to probable cause is a pure question of law. The burden of proof to show lack of probable cause is on the plaintiff and there is nothing to send to the jury if the plaintiff does not raise some evidence creating an issue of fact as to each element of the tort.

(Citation omitted.) *Mohamud v. Wachovia Corp.*, 260 Ga. App. 612, 613-614 (580 SE2d 259) (2003) (false arrest). See also *K Mart Corp. v. Griffin*, 189 Ga. App. at 226-227 (malicious prosecution).

In this case, Barnette and Hendrix were indicted by a grand jury.

> Although evidence of an indictment is not conclusive, it is prima facie evidence of probable cause which shifts the burden to the plaintiff to come forward with specific facts tending to show that probable cause did not exist for his arrest and that the charges against him were instead motivated by malice.

(Punctuation and footnote omitted.) *Thompson v. Howard Bros.*, 289 Ga. App. 273, 274-275 (657 SE2d 4) (2008). Moreover, a defendant may successfully defend against a claim of malicious prosecution when the arresting officer provides an uncontroverted affidavit "that the decision to arrest plaintiff was made solely by him in the exercise of his professional judgment and independently of any exhortations by the defendants." (Citation omitted.) *Jacobs v. Shaw*, 219 Ga. App. 425, 426 (1) (465 SE2d 460) (1995). See also *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179-180 (1) (449 SE2d 895) (1994). The trial court relied upon the holding in *Jacobs* in granting summary judgment to Coastal and Kim finding that Barnette and Hendrix failed to present any evidence to controvert Chandler's affidavit that he exercised his own professional judgment in deciding to pursue the case.

But Barnette and Hendrix argue that the trial court's reliance upon *Jacobs* was misplaced because later decisions of this Court have created exceptions to the holding that an arresting officer's assertion of independent judgment insulates a defendant from a malicious

prosecution claim, citing *Adams v. Carlisle*, 278 Ga. App. 777 (630 SE2d 529) (2006) (physical precedent only); *Corporate Property Investors v. Milon*, 249 Ga. App. 699 (549 SE2d 157) (2001); *Holmes v. Achor Center*, 249 Ga. App. 184 (547 SE2d 332) (2001).

We note first that the decision in *Adams v. Carlisle* is physical precedent only. Three judges of the seven-judge panel dissented to the holding upon which Barnette and Hendrix rely, and three of the other judges concurred in the judgment only. 278 Ga. App. at 794. Thus, the opinion is nonbinding on this issue. Court of Appeals Rule 33 (a). In any event, the case is factually distinguishable. In *Adams*, the plaintiffs were arrested for forgery after a counterfeit detection pen indicated that the $20 bills they presented to the defendants were counterfeit. After police were summoned, one of the plaintiffs explained that the bills were old having belonged to her 86-year-old father-in-law, but they were real currency.[4] Id. at 778-781. Recorded conversations of the arresting officer's discussions with a store employee prior to the arrest, however, suggested that the employee actively tried to dissuade the officers from accepting the plaintiffs' explanation. Judge Mikell's opinion in *Adams* found that this presented a question of fact on a claim of malicious prosecution against the employee and her employer. Id. at 786 (3) (a). Here, there was no evidence that Kim or anyone from Coastal similarly tried to dissuade Chandler from believing Barnette's or Hendrix's version of events. To the contrary, Chandler asserted that Barnette supported Coastal's version of the facts, although Barnette denies this.

We also find the case of *Corporate Property Investors v. Milon* inapposite. In that case, a mall security guard claimed to have observed the plaintiff attempting to shoplift a blouse. 249 Ga. App. at 699. The police officer summoned to the scene relied upon the security guard's statement that she had seen the plaintiff conceal the blouse in a bag, attempt to walk out of the store, then take the blouse out of the bag and put it back. The officer made no independent investigation before arresting the plaintiff. The security guard later admitted that she had not seen the plaintiff remove the blouse from his bag. Id. at 699-700. This Court affirmed the denial of summary judgment to the defendants, discounting the officer's statement that she had made the arrest based upon her own professional judgment. The Court noted that the officer relied solely upon the security guard's statements in making the arrest, without any independent investigation. The Court also found the officer's statement self-serving as she was a party to the litigation. Id. at 701-703 (1). In

---

[4] There was some indication that counterfeit detection pens did not work on bills older than 1959. *Adams v. Carlisle*, 278 Ga. App. at 783 (1).

738

contrast, Chandler is not a party to this litigation, and the evidence demonstrates that he conducted his own investigation, reviewing records and interviewing witnesses, before referring the case to the district attorney.

The case of *Holmes v. Achor Center*, however, is instructive. Holmes was arrested for simple assault after Achor's employee, Matthews, told police that Holmes threatened to get his gun when Matthews removed his name from a church sign. 249 Ga. App. at 190 (2) (b). Holmes denied ever making such a threat, and asserted that Matthews threatened him with a pair of bolt cutters. Id. The arresting officer averred that he made an "independent and uninfluenced" decision to arrest Holmes based upon Matthews' statement along with his own observations of Holmes' demeanor at the scene. (Punctuation omitted.) Id. In addition, the officer said that Holmes admitted threatening to get his gun, but only after Matthews threatened him with bolt cutters. Id.

Holmes asserted a claim of malicious prosecution against Matthews and Achor arguing that Matthews provided police with false information that Holmes threatened him with a gun. This Court noted that

the law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for malicious prosecution; in the latter case there is not. It is clear, though, that initiation of the criminal action need not be expressly directed by the party to be held liable. *Of course, if the informer knew that the facts stated were false, it is clear that he attempted to influence the officer's judgment and he is, therefore, responsible for such subsequent action as may be taken.*

(Punctuation and footnote omitted; emphasis supplied.) *Holmes v. Achor Center*, 249 Ga. App. at 191 (2) (b).

The Court acknowledged that for summary judgment purposes, it was required to view the facts in the light most favorable to Holmes, who asserted that he never threatened Matthews. Thus, the Court found that an issue of fact existed as to whether Matthews knowingly made a false statement to police, which would render the defendants liable for malicious prosecution. The Court determined that such credibility determinations were the function of the jury. *Holmes v. Achor Center*, 249 Ga. App. at 191 (2) (b). "[T]he movant for summary judgment carries the burden to eliminate material

issues of fact, and where material issues can be eliminated only by making credibility judgments, the movant has not met his burden." (Punctuation and footnote omitted.) Id. at 192 (2) (b).

In this case, Barnette and Hendrix argue that Coastal and Kim made false statements to Chandler. Werner told the officer that he was unaware of Hendrix's employment and that Barnette was not entitled to the pay raise, while Barnette asserts that Werner approved both expenditures. Accordingly, an issue of fact exists as to whether Werner knowingly made false statements to Chandler in an attempt to influence the officer's judgment, and that issue precludes summary judgment to Coastal because Werner was Coastal's agent at the time.[5] "Evidence that a malicious prosecution defendant misrepresented material information to the police raises a factual issue as to whether the defendant had a reasonable and honest belief regarding probable cause." (Footnote omitted.) *Gibbs v. Loomis, Fargo & Co.*, 259 Ga. App. 170, 175 (576 SE2d 589) (2003). We, therefore, reverse the grant of summary judgment to Coastal.

No evidence exists, however, that Kim knowingly made any false statements to Chandler. Barnette and Hendrix merely argue that Kim had access to all financial records and periodically reviewed the practice's financial matters, including checks, and thus could have seen evidence of Barnette's increased salary and the payments to Hendrix had he so desired. But there was no evidence that he actually was aware of these matters before Swicord brought them to his attention. In fact, Kim stated that he did not review payroll because at that time he had confidence in his employees.

Nevertheless, Barnette and Hendrix contend that Kim is liable because he failed to make a reasonable investigation into the matter. "If a reasonable person would have investigated to determine if probable cause existed prior to swearing out a warrant, then such failure to make an investigation may imply malice, as well as go to whether probable cause existed." (Footnote omitted.) *Fleming v. U-Haul Co. &c.*, 246 Ga. App. 681, 684 (3) (541 SE2d 75) (2000). "The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so." (Citation, punctuation and footnote omitted.) *McClelland v. Courson's 441 South Station*, 248 Ga. App. 170, 172 (546 SE2d 300) (2001).

[5] We find *Holmes* applicable even though Chandler stated that Barnette admitted hiring Hendrix without Coastal's knowledge. This discrepancy merely compounds the factual issues; it does not eliminate them. Moreover, a similar discrepancy occurred in *Holmes*, where the officer reported that Holmes admitted threatening Matthews with a gun, but only after being threatened first, and Holmes denied it.

Barnette and Hendrix contend that certain incidents occurred after Werner was hired that should have put Kim on notice that Werner was untrustworthy and thus prompted further investigation. They assert that Kim was aware that Werner had written bad checks to the practice and that Werner failed to get approval for a corporate credit card due to his financial condition. And after Werner was hired, the practice began to experience cash flow issues and to get deeper into debt. Additionally, during 2002, the firm's outside accountant wrote Kim a series of letters questioning Werner's actions and honesty in his handling of the practice's business. Ultimately in September 2002, the accountant severed her relationship with Coastal, in part, because the practice failed to heed her advice and counsel regarding Werner. Kim stated, however, that he found the tone of these letters to be unprofessional, which caused him to lose respect for the accountant. Although he said he conducted due diligence to investigate the issues raised by the accountant, at that point he continued to have confidence in Werner.

Considering these factors, we find as a matter of law that the record demonstrates that Kim conducted a reasonable inquiry and was not required to take further steps to verify the information upon which he based his complaint to police. It was not only Werner who denied knowledge of Hendrix's involvement with the HIPAA manual. Neither Barnette's administrative assistant, nor the employee who actually prepared the manual had any knowledge that Hendrix had worked on it. Moreover, Barnette's salary in the tax records did not comport with the salary on the severance agreement Kim and Barnette both signed in September 2002. Thus, Kim's decision was not made solely in reliance upon Werner's representations, but rather upon other objective factors, which appeared to support Werner's version of events. Under these circumstances, we cannot find Kim's failure to conduct further inquiry unreasonable. See *Gibbs v. Loomis, Fargo & Co.*, 259 Ga. App. at 175. Compare *Fleming v. U-Haul Co. &c.*, 246 Ga. App. at 684 (jury issue as to malice based upon lack of investigation, where defendant company brought theft charges against renter who called company twice to request assistance and to inform them where the rental truck had stalled near company office, and company failed to walk "just up the road" to where the truck was located). Accordingly, because Barnette and Hendrix have failed to raise a factual issue on the elements of malice and probable cause with regard to Kim, we affirm the trial court's grant of summary judgment to him individually.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 20, 2008.

*Savage, Herndon & Turner, Christopher D. Britt*, for appellants.
*Jackson & Schiavone, Michael G. Schiavone, Bouhan, Williams & Levy, Todd M. Baiad*, for appellees.