**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 23, 2024**

# In the Court of Appeals of Georgia

A23A1472. TRIDENT WHOLESALE, INC. et al v. BROWN.

A23A1473. ABDULRASOOL GHULAMHUSSAIN v. BROWN.

DILLARD, Presiding Judge.

In these companion cases, the appellants challenge the trial court's denial of their motions for summary judgment in William Brown's action against them for malicious prosecution, intentional infliction of emotional distress ("IIED"), attorney fees, and punitive damages. Specifically, in Case No. A23A1472, Trident Wholesale Inc. d/b/a "Ghandi Wholesale," Farooq Ghandi, Padma Bhanela, and Chandra Sankla[1] argue (1) the trial court incorrectly analyzed the key elements of Brown's malicious-prosecution claim; (2) probable cause existed for Brown's arrest and

---

[1] These parties will be referred to collectively as the "Trident appellants."

criminal charges as a matter of law, which precluded his malicious-prosecution claim; (3) no genuine issue of material fact existed as to the malice element of this claim; (4) criminal prosecution does not satisfy the extreme/outrageous conduct element of an IIED claim; and (5) Brown's derivative claims for punitive damages and attorney fees fail because his substantive claims are without merit. In Case No. A23A1473, Abdulrasool Ghulamhussain appeals the same trial-court order denying his separate motion for summary judgment, arguing (1) as to the malicious-prosecution claim, a pretrial finding that probable cause existed for Brown's arrest and criminal charges created a rebuttable presumption that it existed; (2) Brown's IIED claim fails as a matter of law because his malicious-prosecution claim lacks merit; and (3) Brown's derivative claims for attorney fees and punitive damages fail because Ghulamhussain is entitled to summary judgment as to his substantive claims. For the following reasons, we vacate the trial court's order in both cases and remand for further proceedings consistent with this opinion.[2]

---

[2] Oral argument was held in these consolidated appeals on September 5, 2023, and is archived on the Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case Nos. A23A1472 and A23A1473 (Sept. 5, 2023), *available at* https://vimeo.com/863001367.

Viewing the evidence in the light most favorable to Brown (*i.e.*, the nonmoving party),[3] the record shows that in 2008, Brown began selling male sex-enhancement pills—which he purchased from Angel Wholesales—using the brand name "Goldreallas." In September 2010, Goldreallas was incorporated with the Secretary of State of Georgia; and shortly after that, Brown trademarked "Goldreallas" and its logo. But in 2014, Brown received a public notice, along with a cease-and-desist letter, from the United States Food and Drug Administration ("FDA"), notifying him that certain tests revealed Goldreallas were "tainted" and ordering him to stop selling them immediately. Brown believed the pills at issue were not Goldreallas because (he claims) they were never tested by the FDA. So, even though he believed the tainted pills were actually counterfeit Goldreallas, he nevertheless complied with the FDA's order to stop selling them.[4]

---

[3] *See*, *e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

[4] We express no opinion as to whether the pills tested by the FDA were actually counterfeit Goldreallas. At the summary-judgment stage, we are charged with viewing the evidence in the light most favorably to Brown. *See supra* note 3 & accompanying text.

On February 26, 2016, Brown went to Trident Wholesale d/b/a Ghandi Wholesale,[5] a wholesale supply business owned by Ghandi and Ghulamhussain, to discuss partnering with them to sell new products, such as an energy shot using the brand name Goldreallas. But when Brown arrived, he immediately noticed counterfeit Goldreallas pills for sale. And according to Brown, the pills were identical to Goldreallas in every respect, including the name, logo, color, size of the box, serial code, and packaging. As a result, Brown demanded Ghandi and Ghulamhussain stop selling the pills because they were using his brand name without compensating him; and in any event, the FDA had banned them from being sold. Later, over dinner, the men discussed the issue again and Ghandi and Ghulamhussain promised Brown they would stop selling the counterfeit Goldreallas.

Then, on April 28, 2016, Brown went to Ghandi Wholesale again to speak to Ghulamhussain about selling a new product; and when he arrived, he saw the counterfeit Goldreallas were still being sold, which made him "pretty upset." Brown then retrieved a large shopping cart and placed all of the counterfeit Goldreallas inside

---

[5] Because Trident does business as "Ghandi Wholesale," we refer to the physical location in which Trident sells its products as "Ghandi Wholesale," rather than Trident.

of it "with a sense of urgency." Ghulamhussain was not in his office; but while looking for him, Brown encountered Suman Reddy, a store employee sitting in a truck. Brown instructed Reddy to tell Ghandi to "stop infringing on [his] trademark and stop selling [the] stolen property." In response, Reddy rushed toward Brown in an aggressive manner, and Brown stuck out his hand to protect his previously injured shoulder. And according to Brown, Reddy then ran into his hand, and he "pushed [him] down."[6]

---

[6] In addition to admitting he pushed Reddy down, Brown also testified, *inter alia*, that when he placed his arm out to protect himself, Reddy simply fell. And importantly, Brown failed to provide a reasonable explanation for the discrepancies in his testimony regarding his interaction with Reddy. Needless to say, when a party has "given contradictory testimony, and when that party relies exclusively on that testimony in opposition to summary judgment, a court must construe the contradictory testimony against him." *Bradley v. Winn-Dixie Stores, Inc.*, 314 Ga. App. 556, 557 (724 SE2d 855) (2012) (punctuation omitted). And under such circumstances, we must "disregard the favorable portions of the contradictory testimony and then decide whether the remaining evidence is sufficient to get by summary judgment." *Id.* at 557-58 (punctuation omitted). Here, because Brown's admitted act of *pushing* Reddy down may be relevant to whether there was probable cause to support any of the charged offenses, this testimony must be construed against him. *See CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003) ("[A] trial court that is faced with a party's self-contradictory sworn testimony on a material fact should disregard the portions of that testimony that favor the party when deciding a motion for summary judgment, unless the party offers a reasonable explanation for the contradiction."); *Thornton v. Nat'l Am. Ins. Co.*, 269 Ga. 518, 519 (4) (499 SE2d 894) (1998) (reiterating its prior holding that "on a motion for summary judgment, the moving party's self-contradictory testimony, if not reasonably

After this physical altercation, Brown returned to the front of the store with the counterfeit products he confiscated and was confronted by Sankla and Bhanela, who were working as cashiers. Brown told them he was the owner of Goldreallas, and Ghandi Wholesale was not allowed to sell the counterfeit pills. One of the cashiers responded that they could sell whatever they wanted to sell. That employee then walked toward Brown, and Brown said "don't walk up on me motherfucker . . . [l]ike y'all stand back." Later, when asked whether he said this in an aggressive manner, Brown testified that making such a statement "doesn't work in a soft tone of voice. I can't say don't walk up on me motherfuckers and then they fucking stop walking. I have to say don't walk up on me in order for them to stop walking." And according to Brown, the situation escalated to the point that he and Bhanela were yelling at each other. Eventually, Brown left the warehouse, taking all of the counterfeit Goldreallas with him.

About ten minutes later, Ghandi called Brown "screaming and cursing" and threatening to call 911. Brown responded by saying, "fine, call 911." When the police arrived, they took statements from the Ghandi Wholesale employees involved and

explained, was to be construed against him").

reviewed security footage of the altercation between Brown and the two cashiers. Then, following an investigation into the matter, an investigator with the Forest Park Police Department issued a detailed report, concluding that there was probable cause to apply for warrants to arrest Brown for robbery by intimidation, terroristic threats, and simple battery.

Given these conclusions, the investigator applied for warrants to arrest Brown for the foregoing offenses, and the magistrate court issued them. Thereafter, Brown waived his right to a preliminary hearing "to examine the issue of probable cause" for each of the charged offenses. Ultimately, Brown was charged, via indictment, with robbery by intimidation, simple battery, and two counts of terroristic threats. Brown's case then proceeded to trial, at which a jury acquitted him of robbery by intimidation, and the trial court granted directed verdicts of acquittal as to the remaining charges.

Following trial, Brown filed suit against Trident, Gandhi, Ghulamhussain, Bhanela, and Sankla, asserting claims for malicious prosecution, IIED, attorney fees, and punitive damages. Discovery then ensued, and eventually, the Trident appellants and Ghulamhussain filed separate motions for summary judgment. The trial court later held a hearing on the matter, after which it denied both motions in a single order.

Thereafter, the trial court granted the appellants a certificate of immediate review, and these appeals follow this Court's grant of their applications for interlocutory appeals.[7]

Summary judgment is, of course, proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[8] Additionally, a *de novo* standard of review "applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[9] And importantly, at the summary-judgment stage, we do not "resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[10] With these guiding principles in mind, we will address the appellants' specific claims of error.

---

[7] *See Se. Sec. Ins. Co. v. Empire Banking Co.*, 268 Ga. 450, 451 (490 SE2d 3720 (1997) ("The denial of a motion for summary judgment is clearly an interlocutory ruling which, if certified by the trial court, is subject to the interlocutory appeal provisions of OCGA § 5-6-34 (b).").

[8] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[9] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[10] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

*Case No. A23A1472*

1. The Trident appellants first argue the trial court incorrectly analyzed the key elements of Brown's malicious-prosecution claim. We agree.

In order to state a claim for malicious prosecution, the plaintiff must show "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff."[11] But the gravamen of the complaint is "the absence of probable cause on the part of the person instituting the prosecution."[12] Further, in malicious-prosecution cases, the question of probable cause is "a mixed question of law and fact."[13] Importantly, whether the circumstances alleged to show probable cause existed is "a matter of fact, to be

---

[11] *Sheffield v. Futch*, 354 Ga. App. 661, 668 (3) (839 SE2d 294) (2020) (punctuation omitted); *accord Wal-Mart Stores, Inc. v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994)*; McKissick v. S.O.A., Inc.*, 299 Ga. App. 772, 774 (1) (684 SE2d 24) (2009).

[12] *McKissick*, 299 Ga. App. at 774 (1) (punctuation omitted); *accord Blackford*, 264 Ga. at 613; *Wills v. Arnett*, 306 Ga. App. 503, 506 (2) (702 SE2d 646) (2010).

[13] *McKissick*, 299 Ga. App. at 774 (1) (punctuation omitted); *Gooch v. Tudor*, 296 Ga. App. 414, 418 (1) (c) (674 SE2d 331) (2009); *see Hicks v. Brantley*, 102 Ga. 264 (29 SE 459, 462) (1897) ("The doctrine generally adopted in the American courts is that the question of probable cause is a mixed question of law and fact.").

determined by the jury, but whether they amount to probable cause is a question of law for the court."[14]

In Georgia, probable cause is defined as "the existence of such facts and circumstances as would excite the belief in a reasonable mind[ ] that the person charged was guilty of the crime for which he was prosecuted."[15] And this belief must be supported by "appearances known to the defendant at the time he initiates the prosecution, and the appearances must be such as to lead a reasonable man to set the criminal proceeding in motion."[16] On the other hand, there is a lack of probable cause when the circumstances are such "as to satisfy a reasonable man that the accuser had

---

[14] *McKissick*, 299 Ga. App. at 774 (1) (punctuation omitted); *accord Gooch*, 296 Ga. App. at 418 (1) (c); *see Hicks*, 102 Ga. 264 (29 SE at 462) ("The question of probable cause is a question for the jury, under the direction of the court; that is, a question of fact for the jury, but subject to the provisions of the law thereon." ).

[15] *McKissick*, 299 Ga. App. at 774 (1) (punctuation omitted); *accord Gooch*, 296 Ga. App. at 418 (1) (c); *see Hicks*, 102 Ga. 264 (29 SE at 462) ("The probable cause referred to has been defined to be the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted" (punctuation omitted)).

[16] *McKissick*, 299 Ga. App. at 774 (1) (punctuation omitted); *accord K-Mart Corp. v. Coker*, 261 Ga. 745, 752 (1) (410 SE2d 425) (1991); *Gooch*, 296 Ga. App. at 418-19 (1) (c).

no ground for proceeding but his desire to injure the accused."[17] Significantly, the return of an indictment is "prima facie, though not conclusive, evidence of probable cause, as is the waiver of a preliminary hearing."[18] Finally, the burden of proof to show lack of probable cause is on the plaintiff, and "there is nothing to send to the jury if the plaintiff does not raise some evidence creating an issue of fact as to each element of the tort."[19]

---

[17] *McKissick*, 299 Ga. App. at 774-75 (1) (punctuation omitted); *accord* OCGA § 51-7-3; *Horne v. J.H. Harvey Co.*, 274 Ga. App. 444, 447 (617 SE2d 648) (2005); *see West v. Baumgartner*, 228 Ga. 671, 676 (2) (187 SE2d 665) (1972) (noting that under Georgia law, the "[want of probable cause shall be a question for the jury, under the direction of the court, and shall exist where the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused").

[18] *Rowe v. CSX Transp., Inc.*, 219 Ga. App. 380, 381 (465 SE2d 476) (1995); *see Monroe v. Sigler*, 256 Ga. 759, 760 (3) (353 SE2d 23) (1987) ("The action of a magistrate in binding over the accused on a criminal warrant is prima facie, but not conclusive, evidence of probable cause for such prosecution." (punctuation omitted)); *Smith v. Tr. Co. Bank*, 215 Ga. App. 413, 415-16 (1) 450 SE2d 866) (1994) ("The fact plaintiff waived his preliminary hearing and the fact that he was subsequently indicted by a grand jury is prima facie evidence of the existence of probable cause.").

[19] *McKissick*, 299 Ga. App. at 775 (1) (punctuation omitted); *Barnette v. Coastal Hematology & Oncology, P.C.*, 294 Ga. App. 733, 736 (670 SE2d 217) (2008); *Franklin v. Consol. Gov't of Columbus, Ga.*, 236 Ga. App. 468, 470 (1) (512 SE2d 352) (1999).

Here, the Trident appellants contend the trial court incorrectly analyzed key elements and associated principles of a malicious-prosecution claim. And they are indeed correct that the trial court, among other things, failed to acknowledge the *prima facie* evidence that probable cause supported *all* of Brown's charged offenses (*i.e.*, he was indicted by a grand jury and waived his right to a preliminary hearing).[20] As a result, the trial court also did not address whether Brown successfully rebutted this *prima facie* evidence. In fact, although the trial court mentioned probable cause a few times in passing and noted that the lack of probable cause is one element of malicious prosecution, it did not *substantively* address whether there was probable cause to support Brown's criminal prosecution for any particular offense.

Instead, the trial court simply detailed conflicts in the evidence regarding whether each Trident appellant (and Ghulamhussain) knowingly and maliciously made false statements or omitted material facts when speaking to law enforcement. Then, the trial court summarily concluded such conflicts could support a jury determination that there was a want of probable cause and the appellants acted with malice. But while a jury can infer malice when there is a lack of probable cause, a jury

---

[20] *See* note 18 & accompanying text.

*cannot* infer the lack of probable cause when there is evidence of malice.[21] Simply put, it is not enough that the trial court found that there were jury questions regarding whether the Trident appellants maliciously initiated Brown's prosecution by either lying or omitting material facts when speaking to police. To the contrary, the trial court was required to independently address the probable-cause element of malicious prosecution.

More precisely, probable cause is "the existence of such facts and circumstances as would excite the belief in a reasonable mind, that the person charged *was guilty of the crime* for which he was prosecuted."[22] And here, the trial court did not address whether there was undisputed evidence as to *each element* required to prove

---

[21] *See Hicks*, 102 Ga. 264 (29 SE at 462) ("A right of action for a malicious prosecution exists only when the prosecution is the result of a desire to injure the accused. In such an action[,] malice against the accused may be inferred from want of probable cause, but the want of probable cause will not be inferred, even though malice is shown to have existed."); *Fleming v. U-Haul Co. of Ga.*, 246 Ga. App. 681, 683 (2) (541 SE2d 75) (2000) ("There can be no recovery [for malicious prosecution] even though the prosecution was malicious, if there was probable cause for it . . . ."); *Kviten v. Nash*, 150 Ga. App. 589, 591 (5) (258 SE2d 271) (1979) (explaining that "[a]lthough a jury cannot infer a lack of probable cause from malice, a jury is authorized to infer malice from a lack of probable cause" (citation omitted)).

[22] *McKissick*, 299 Ga. App. at 774 (1) (punctuation omitted) (emphasis supplied); *accord Gooch*, 296 Ga. App. at 418 (1) (c); *supra* note 15 & accompanying text.

robbery by intimidation, terroristic threats, *or* simple battery. In fact, the trial court did not even mention or acknowledge the requisite elements of any charged offense.[23] Significantly, the lack of probable cause is the most important element of a malicious-prosecution claim.[24]

Needless to say, we are a court of review, "not of first view."[25] Put another way, this is a Court for the correction of errors of law; and if "the trial court has not ruled on an issue, we will not address it."[26] As a result, under the foregoing circumstances,

---

[23] A finding of probable cause as to "one related offense arising from the same transaction is a binding determination that there was probable cause for *all* related charges arising from the same transaction or occurrence." *Remeneski v. Klinakis*, 222 Ga. App. 12, 15 (1) (473 SE2d 223) (1996) (emphasis supplied); *see, e.g.*, *Day Realty Assocs., Inc. v. McMillan*, 247 Ga. 561, 562 (277 SE2d 663) (1981) ("We hold that as long as there was probable cause to prosecute for the theft of some of the items, [the defendant] cannot be liable in tort for malicious prosecution.").

[24] *See Coker*, 261 Ga. at 746 (1) ("The lack of probable cause is the gravamen of a malicious prosecution action."); *Barnette*, 294 Ga. App. at 735-36 (same); *supra* note 12 & accompanying text.

[25] *State v. Jennings*, 362 Ga. App. 790, 796 (1) (c) (869 SE2d 183) (2022) (punctuation omitted); *accord Flanders v. State*, 360 Ga. App. 855, 855 (862 SE2d 152) (2021) (punctuation omitted); *see Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[A]bsent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." (footnote omitted)).

[26] *Pneumo Abex v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020) (punctuation omitted); *accord Stanley v. Gov't Emps. Ins. Co.*, 344 Ga. App. 342, 346 (2) (810 SE2d 179) (2018); *see supra* note 25 & accompanying text.

we must vacate the trial court's order denying the Trident appellants' motion for summary judgment and remand for the court to address whether the lack-of-probable-cause element of malicious prosecution was satisfied.[27]

2. Next, the Trident appellants argue Brown's IIED claim fails as a matter of law because his malicious-prosecution claim fails. And they also argue Brown's derivative claims for punitive damages and attorney fees are precluded because his substantive claims are without merit. But given that this case is being remanded for further consideration of Brown's malicious-prosecution claim, it is premature for this Court to address the merits of these arguments at this time.

---

[27] *See Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 253 (830 SE2d 119) (2019) (vacating a trial court's disposition of a motion and remanding the case for the trial court to reconsider its decision under the proper legal standard); *Earls v. Aneke*, 350 Ga. App. 455, 458-59 (1) (829 SE2d 661) (2019) (vacating the trial court's denial of summary judgment and remanding the case for the trial court to address a particular issue in the first instance); *Piedmont Hosp., Inc. v. D. M.*, 335 Ga. App. 442, 449 (3) (779 SE2d 36) (2015) (vacating the trial court's denial of summary judgment and remanding the case for the court to address the appellants equitable-estoppel argument); *Strength v. Lovett*, 311 Ga. App. 35, 44-45 (2) (b) (714 SE2d 723) (2011) (remanding question not reached by trial court); *DuPree v. S. Atl. Conf. of Seventh Day Adventists*, 299 Ga. App. 352, 355 (683 SE2d 1) (2009) (remanding where "trial court did not rule upon the other grounds advanced by appellee in its motion for summary judgment").

3. In his appeal, Ghulamhussain challenges the same trial court order at issue in Case No. A23A1472 and raises similar arguments to those made by the Trident appellants. But because this order is being vacated and the case remanded for further proceedings, we need not address Ghulamhussain's arguments separately.

For all these reasons, we vacate the trial court's order in both Case Nos. A23A1472 and A23A1473 and remand them to the trial court for further proceedings consistent with this opinion.

*Judgments vacated and cases remanded with direction. Rickman and Pipkin, JJ., concur.*